1   David C. Parisi (SB #162248)
    dcparisi@parisihavens.com
2   SUZANNE HAVENS BECKMAN (SB #188814)
    shavens@parisihavens.com
3   PARISI & HAVENS LLP
    212 Marine Street, Ste. 100
4   Santa Monica, CA 90405
    Tel: (818) 990-1299
5   Fax: (818) 501-7852

6   *Attorneys for Plaintiff*
    [Additional counsel appear on signature page]
7

8   **IN THE UNITED STATES DISTRICT COURT**
    **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
    **SAN JOSE DIVISION**
9

10  TONY MCKENNA, individually and on          ) Case No. 14-CV-00424-PSG
    behalf of a class of similarly situated    )
11  individuals,                               ) **PLAINTIFF'S MEMORANDUM**
                                               ) **IN OPPOSITION TO**
12                         Plaintiff,          ) **DEFENDANTS' MOTION TO**
                                               ) **DISMISS, OR IN THE**
13  v.                                         ) **ALTERNATIVE, TO STAY**
                                               ) **PROCEEDINGS**
14                                             )
15  WHISPERTEXT, LLC, a Delaware limited       ) Hearing Date: August 12, 2014
    liability company, and WHISPERTEXT,        ) Hearing Time: 10:00 a.m.
16  INC., a Delaware corporation,              ) Dept: Courtroom 5
                                               ) Judge: Paul Singh Grewal
17                         Defendants.         ) Date Action Filed: January 28, 2014
                                               )
18                                             )

19

20

21

22

23

24

25

26

27

28  P's Opp. to Motion to Dismiss,                          Case No. 14-CV-00424-PSG
    or in the Alternative, to Stay

# **TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………………......1

STATEMENT OF FACTS…………………………………………………………….........2

ARGUMENT………………………………………………………………………….......3

I.    Plaintiff Has Sufficiently Pleaded A Violation Of The TCPA .............................3

    A.    Legal Standard for a 12(b)(6) Motion to Dismiss....................................3

    B.    Plaintiff Has Sufficiently Pleaded the Use of an ATDS. ..........................4

    C.    The Cases Cited by WhisperText are Inapposite.....................................6

II.   The Court Should Decline To Invoke The Doctrine Of Primary Jurisdiction....................9

    A.    Primary Jurisdiction Should be Invoked Only in Limited Circumstances. ...........10

    B.    Plaintiff's Claims Raise Straightforward Issues Under the TCPA, Resolvable Through Discovery and Guidance from Existing FCC Rulings and Applicable Legal Precedent.......................................................11

        1.    Courts have regularly reviewed and interpreted the ATDS provision under the TCPA. ..............................................12

        2.    WhisperText has produced evidence in its Motion that further supports a finding that an ATDS was used. ..............................14

        3.    WhisperText provides no basis for the Court to conclude that any forthcoming ruling from the FCC would be relevant to this case. ...........15

    C.    The FCC Has Already Addressed "Group Texting" Applications and Will Not Contradict Itself on the Issue of ATDS. ....................................16

        1.    The March 27 FCC Ruling makes it clear that WhisperText can be held liable for the text messages at issue in this case. ................17

        2.    WhisperText's partner who sent the subject text messages is the same entity that sought to stay similar litigation and was denied relief by the FCC. ............................................18

    D.    The FCC Will Not Further Address Group Texting Applications, and May Not Issue Any Ruling Related to Any Issues Relevant to This Case. ...................19

    E.    A Stay is Not Required to Permit Uniform Administration of the TCPA, as the FCC has Already Spoken on the Subject of Group Texting Applications Such as Defendant's.....................................................20

    F.    A Stay Would Not Promote Efficiency in This Case. ...........................21

    G.    Plaintiff and the Putative Class Would be Prejudiced by a Stay. ..........23

CONCLUSION.........................................................................................24

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGES(S)**

*Abbas v. Selling Source, LLC*,
   No. 09-cv-3413, 2009 WL 4884471 (N.D. Ill. Dec. 14, 2009) ............................................ 5-6

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009).....................................................................................................4

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................................4

*Brown v. MCI WorldCom Network Services, Inc.*,
   277 F.3d 1166 (9th Cir. 2002) .......................................................................................10

*Clark v. Time Warner Cable*,
   523 F.3d 1110 (9th Cir. 2008) ................................................................................. 20-21

*Coupons, Inc. v. Stottlemire*,
   588 F.Supp.2d 1069 (N.D. Cal. 2008) ...........................................................................4

*Daniels v. Community Lending, Inc.*,
   No. 13-cv-488-WQH-JMA, 2014 WL 51275 (S.D. Cal. Jan. 6, 2014) ............................... 8-9

*Doe v. U.S.*,
   58 F.3d 494 (9th Cir. 1995) ............................................................................................9

*Freidman v. Massage Envy Franchising, LLC*,
   No. 12-cv-02962-L-RBB, 2013 WL 3026641 (S.D. Cal. June 13, 2013) ..............................7

*Fried v. Sensia Salon, Inc.*,
   No. 13-cv-00312, 2013 WL 6195483 (S.D. Tex. Nov. 27, 2013) .................................... 11-12

*Gibson v. U.S.*,
   781 F.2d 1334 (9th Cir. 1986) .......................................................................................3

*Glauser v. Twilio, Inc.*,
   No. 13-cv-2584-PJH, 2012 WL 259426 (N.D. Cal. Jan. 27, 2012)........................................18

*Griffith v. Consumer Portfolio Serv., Inc.*,
   838 F.Supp.2d 723 (N.D. Ill.) .................................................................................13, 16

*Ibey v. Taco Bell Corp.*,
   No. 12-cv-583-H-WVG, 2012 WL 2401972 (S.D. Cal. June 18, 2012) ............................. 7-8

*Johnson v. Riverside Healthcare Sys., LP.*,
   534 F.3d 1116 (9th Cir. 2008) ........................................................................ 3-4

*Kazemi v. Payless Shoesource Inc.*,
   No. C-09-5142-MHP, 2010 WL 963225 (N.D. Cal. Mar. 16, 2010) .................... 5-6

*Knutson v. Reply!, Inc.*,
   No. 10-CF-1267-BEN(WMc), 2011 WL 291076 (S.D. Cal., Jan. 27, 2011) ........... 7

*Kramer v. Autobytel, Inc.*,
   759 F.Supp.2d 1165 (N.D. Cal. 2010) .............................................................. 4-7

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir.2005) ........................................................................... 24

*Lozano v. Twentieth Century Fox Film Corp.*,
   702 F.Supp.2d 999 (N.D. Ill. 2010) ................................................................... 5

*Meyer v. Portfolio Recovery Associates, LLC*,
   No. 11-cv-1008-AJB (RBB), 2011 WL 11712610 (S.D. Cal. Sept. 14, 2011) ....... 11

*Natural Resources Defense Council v. Norton*,
   No. 5-cv-1207-OWW-LJO, 2007 WL 14283 (E.D. Cal. Jan. 3, 2007) ............. 23-24

*Pimental v. Google, Inc.*,
   No. C-11-02585, 2012 WL 1458179 (N.D. Cal. Apr. 26, 2012) ................... passim

*Qarbon.com Inc. v. eHelp Corp.*,
   315 F.Supp.2d 1046 (N.D. Cal. 2004) ............................................................... 9

*Satterfield v. Simon & Schuster, Inc.*,
   569 F.3d 946 ..................................................................................................... 5

*Sogeti USA LLC v. Scariano*,
   606 F.Supp.2d 1080 (D. Ariz. 2009) ................................................................ 4

*Sterk v. Path, Inc.*,
   No. 13-cv-2330 (May 30, 2014 Order) (N.D. Ill.) ............................ 8, 12-14, 22

**STATUTES**

47 U.S.C. § 227(a)(1) .......................................................................................... 5

**OTHER AUTHORITIES**

*Comments of Twilio Inc. in Support of GroupMe, Inc. Petition for Declaratory
   Ruling*, CG Dkt. 02-278 (August 30, 2012) ...................................................... 18

FED. R. CIV. P. 8 ............................................................................................ 3, 5, 9

FED. R. CIV. P. 12(b)(6) ................................................................................. 3-4

FED. R. CIV. P. 15(a)(2) .....................................................................................9

*In re GroupMe, Inc./Skype Communications S.A.R.L. Petition for Expedited*
   *Declaratory Ruling,*
   CG Dkt. 02-278, FCC 14-33 (March 27, 2014) ............................... 16-19

*In re Joint Petition Filed by DISH Network, LLC, et. al. for Declaratory Ruling*
   *Concerning the Telephone Consumer Protection Act (TCPA) Rules,*
   CG Dkt. 11-50 (FCC May 9, 2013) .......................................................10

*In re Rules & Regulations Implementing the TCPA,*
   CG Dkt. No. 02-278, 18 FCC Rcd. 14014 (FCC 2003) ........................5, 8

### INTRODUCTION

Defendant WhisperText, LLC and WhisperText, Inc. ("WhisperText") together are a social networking company that operates a mobile application or "app" that permits users to post and receive certain text messages anonymously.  When new users of WhisperText's "Whisper App" sign up for service, they can permit WhisperText to upload their list of personal contacts, and WhisperText then sends those contacts a text message inviting them to download the Whisper App on their own.  Unfortunately, WhisperText sent these identical solicitation messages to all of its new customers' contacts without first obtaining the prior express consent of those recipients.

Having received this unsolicited text message from WhisperText, Plaintiff Tony McKenna brought suit under the TCPA in order to stop WhisperText's wrongful conduct and to recover statutory damages for himself and for the thousands of other putative class members who also received the unsolicited text message from WhisperText.  In response, WhisperText filed a Motion to Dismiss Amended Complaint or, in the Alternative, Stay Proceedings (the "Motion").  (Dkt. 25.)  The 12(b)(6) component of the Motion does little more than repeat the same arguments about the sufficiency of pleadings that have been rejected repeatedly by courts throughout the country.  There can be little doubt that Plaintiff has exceeded the federal pleading standard with respect to the use of an automatic telephone dialing system (ATDS) to send the subject text messages.

Keenly aware that its 12(b)(6) motion will fail, WhisperText asks this Court to stay the case under the doctrine of primary jurisdiction.  WhisperText's effort to have this case stayed is just a desperate attempt to buy perhaps two more years of delay on essentially resolved issues under the TCPA.  WhisperText provides no basis for this Court to conclude that the FCC would ever issue any ruling that could impact this case, and WhisperText further fails to show that Plaintiff's claims present issues of first impression or are "particularly complicated" such that they could not properly be analyzed and determined by this Court without the need to wait indefinitely for potential adjudication from the FCC.  It is

abundantly clear that this Court is well suited to address the issues presented in this case—claims that are based on the TCPA as it exists at this time, as per previous FCC rulings and well-established precedent of courts in this Circuit and throughout the country.  The doctrine of primary jurisdiction is inapplicable, and the Motion should be denied.

## STATEMENT OF FACTS

The facts of this case are fairly straightforward.  As set forth above, WhisperText is a social network company whose customers are individuals who might be interested in posting "secrets" or other comments anonymously.  In order to build its customer database, WhisperText, like many other group texting providers, sends text messages to the "contacts" of its new customers, soliciting them to become additional users of its Whisper App.  On or about December 19, 2013, Plaintiff received a text message, which read:

> Someone you know has anonymously invited you to join Whisper, a mobile social network for sharing secrets. Check out the app here: http://bit.ly.HLVr79.

(*See* First Amended Complaint ("FAC") ¶ 18.)  Plaintiff did not consent to the receipt of this message or any other message from WhisperText.  (FAC ¶ 20.)  Given the large number of WhisperText customers and the substantially larger group of those customers' "contacts" who received the same or similar such messages from WhisperText, Plaintiff filed his Class Action Complaint on January 28, 2014.  (Dkt. 1.) The lawsuit was filed only against WhisperText, LLC, and in order to add the additional relevant WhisperText entity, WhisperText, Inc., Plaintiff filed his substantively identical First Amended Class Action Complaint on February 21, 2014.  (Dkt. 8.)

The facts in this case are, thus far, not seriously in dispute, although the specific details of the technology used to send the subject text messages has not yet been produced in discovery.  WhisperText asserts in its Motion that its customers who had iOS devices (iPhones) sent out the subject text messages directly to their own contacts.  (Motion at 4.) However, WhisperText concedes that for a limited period of time in late 2013 and early 2014, customers who had Android-based cellular phones did not send the subject text messages themselves, but rather the messages were sent by WhisperText through a third-

party communications company using WhisperText's telephone number.  (Motion at 4.)  The fact that these messages were sent en masse using automated equipment without human intervention cannot reasonably be disputed.

Understanding that its prospects in this case were bleak, WhisperText decided to take the fairly novel approach of asking this Court to hold off on applying the law as it currently stands – TCPA law that has been well-developed by the FCC and by courts throughout the country and in this Circuit – and instead sit and wait with the hope that the FCC might issue some ruling in the future that might alter the state of this law.  But this is not a case involving some novel issue of first impression or some complex technological innovation that has never been addressed in this context, and the Court is well-positioned to rule on the straightforward issues in this case.  WhisperText points to four petitions that have been submitted to the FCC by different entities unrelated to this action, each seeking "guidance" relating to the use of an ATDS in the group texting context.  However, as discussed below, it is not clear that the FCC will issue <u>any</u> new ruling related to this case, especially because the FCC addressed group texting applications just a few months ago and chose not to alter its definition of ATDS.  The Court should decline the invitation to permit WhisperText to violate the law and then wait to see if the law changes in the future.  The Motion should be denied.

## ARGUMENT

### I.    Plaintiff Has Sufficiently Pleaded A Violation Of The TCPA

#### A.    Legal Standard for a 12(b)(6) Motion to Dismiss

Under Rule 8(a)(2), a complaint requires only a "short and plain" statement of the claim showing that the plaintiff is entitled to relief and notifying the defendant of the principal events and the claims it is called upon to meet.  *Johnson v. Riverside Healthcare Sys., LP.*, 534 F.3d 1116, 1122 (9th Cir. 2008); *Gibson v. U.S.*, 781 F.2d 1334, 1340 (9th Cir. 1986) (finding a plaintiff is not expected "to plead his evidence").  In deciding a motion to dismiss under Rule 12(b)(6), a court views all facts and reasonable inferences in the complaint in the light most favorable to the plaintiff.  *Johnson*, 534 F.3d at 1122.  While

federal pleading standards require more than a "formulaic recitation of elements" or "naked assertions," a complaint survives dismissal where it states a plausible claim for relief, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), or where it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1940; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Under *Twombly*, a plaintiff's allegations will not be dismissed under Rule 12(b)(6) if two minimum hurdles are cleared: (1) the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests; and (2) the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above a level of speculation. *Twombly*, 550 U.S. at 544-55. A complaint must "provide a 'short and plain statement of the claim showing that [he] is entitled to relief.' This is not an onerous burden. 'Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests.'" *Johnson*, 534 F.3d at 1122 (quoting *Erickson v. Pardus*, 551 U.S. 89 (2007)); *see also Coupons, Inc. v. Stottlemire*, 588 F.Supp.2d 1069, 1073 (N.D. Cal. 2008) (citing *Twombly*) ("heightened fact pleading of specifics is not required to survive a motion to dismiss.") The burden is on the defendant to show that no claim has been presented. *See Sogeti USA LLC v. Scariano*, 606 F.Supp.2d 1080, 1082 (D. Ariz. 2009).

WhisperText's arguments are without merit and redundant of arguments previously rejected by federal courts nationwide. *See, e.g. Kramer v. Autobytel, Inc.*, 759 F.Supp.2d 1165 (N.D. Cal. 2010). As demonstrated herein, Plaintiff more than meets the federal pleading requirements, and WhisperText's Motion should be denied.

### B.   Plaintiff Has Sufficiently Pleaded the Use of an ATDS.

WhisperText's sole argument in support of dismissal of the Complaint is that Plaintiff fails to sufficiently allege that the text messages were sent using an ATDS. WhisperText concedes that Plaintiff has alleged the use of an ATDS and does not attempt to argue – nor could it – that it did not actually utilize an ATDS in sending the text messages at issue.

1   Instead, WhisperText argues only that "Plaintiff fails to allege any facts sufficient to state a

2   plausible claims that WhisperText sent Plaintiff a text message using an [ATDS]."  (Motion

3   at 9.)  WhisperText is wrong; the Complaint sufficiently alleges facts supporting

4   WhisperText's use of an ATDS, a finding supported by numerous other courts reviewing

5   similar allegations.

6        The TCPA unambiguously defines an ATDS as "equipment which has the capacity

7   (A) to store or produce telephone numbers to be called, using a random or sequential number

8   generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added).  The plain

9   language of the TCPA does not require use of the system's capacity to actually send the

10  unlawful text messages.  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 950 ("a system

11  need not actually store, produce or call randomly or sequentially generated telephone

12  numbers, it need only have the capacity to do it."); *Lozano v. Twentieth Century Fox Film

13  Corp.*, 702 F. Supp. 2d 999, 1011 (N.D. Ill. 2010); *In re Rules & Regulations Implementing

14  the TCPA*, CG Dkt. No. 02-278, 18 FCC Rcd. 14014, 14092 (FCC 2003) ("The basic

15  function of [ATDS] equipment, however, has not changed—the *capacity* to dial numbers

16  without human intervention") (emphasis in original).  While allegations that merely restate

17  the TCPA's definition of an ATDS may, in and of themselves, fall short of Rule 8(a)'s

18  minimal pleading guidelines, additional allegations that a defendant used a single, dedicated

19  long code to transmit generic, impersonal messages "en masse" to consumers have

20  repeatedly been found to be sufficient to allege the use of an ATDS in satisfaction of federal

21  pleading requirements.  *See, e.g., Kramer*, 759 F.Supp.2d at 1172; *Kazemi v. Payless

22  Shoesource Inc.*, No. C-09-5142-MHP, 2010 WL 963225, at *2 (N.D. Cal. Mar. 16, 2010);

23  *Abbas v. Selling Source, LLC*, No. 09-cv-3413, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14,

24  2009).  The allegations in the Complaint are sufficient to make it "more than plausible" that

25  the text messages – which Plaintiff alleges to have been uniform and sent out en masse to

26  over 1,000 individuals (FAC ¶¶ 18-19, 22, 29-30) – were not sent by hand by a person, but

27  rather were necessarily sent by a machine that had the capacity to store the numbers of the

28

group members and the capacity to dial those numbers automatically.  Such allegations are sufficient at the pleadings stage.

Substantially similar to the plaintiffs in *Kramer*, *Kazemi*, and *Abbas*, Plaintiff supports his allegation that WhisperText used an ATDS with specific facts regarding the nature of the text messages received and the method in which those text messages were transmitted.  In particular, Plaintiff alleges that the text messages were transmitted "en masse through the use of a long code" (FAC ¶ 30) "to a list of cellular telephone numbers." *(*Id. ¶ 19.)  Plaintiff also provides the specific content of the message, including the generic and impersonal institutional message advertising WhisperText's mobile application and the fact that the message does not identify the name of the recipient, which lends additional support to a finding that the text messages were all identical.  Plaintiff further alleges that Plaintiff and the other Class members did not consent to receive the text messages.  (*Id.* ¶¶ 20, 30.)

In short, this was not a situation where WhisperText sent an individual and personal text message to each "friend and contact" of all of its new subscribers.  On the contrary, a list of the phone numbers of its customers' contacts was uploaded onto WhisperText's database and then routed through a third-party provider using WhisperText's own ten-digit number, demonstrating that, in fact, these text messages were sent en masse using an automated system as opposed to being sent, for example, by an individual inputting specific numbers into a cellular phone.  Nothing more is needed; Plaintiff should not be forced to *prove* the use of an ATDS at the pleadings stage.  Plaintiff has sufficiently alleged the use of an ATDS and the Motion to Dismiss should be denied.

## C.    The Cases Cited by WhisperText are Inapposite.

WhisperText cites to cases from the Southern District of California where TCPA claims were dismissed due to insufficient allegations regarding the use of an ATDS.  (Motion at 10.)  Those cases are readily distinguishable, as unlike the instant case, all involve situations where the court found that the plaintiff had done nothing more than formulaically recite the statutory requirements for an ATDS.

In *Freidman v. Massage Envy Franchising, LLC*, No. 12-cv-02962-L-RBB, 2013 WL WL 3026641 (S.D. Cal. June 13, 2013), the court granted the 12(b)(6) motion after noting that the complaint constituted a mere "formulaic recitation" of the elements of a cause of action and was only supported by the plaintiff's statement in opposition to the motion that the messages were "generic and impersonal." *Id*. at *2. Although the messages in the instant case were also generic and impersonal – which certainly supports a conclusion that an ATDS was utilized – Plaintiff offers significantly more detail here. In fact, the *Freidman* court differentiated the complaint in that case from the complaint in *Kramer,* noting that in *Kramer* the plaintiff additionally alleged the use of an "SMS short code . . . registered to B2BMobile." *Id*. at *3. In the instant case, the Complaint – as in *Kramer* – alleges that the text messages were sent from a "special purpose telephone number known as a long code[1] operated by Defendants and their agent." (FAC ¶ 18.)[2]

*Ibey v. Taco Bell Corp.*, No. 12-cv-583-H-WVG, 2012 WL 2401972 (S.D. Cal. June 18, 2012), is also inapposite. WhisperText cites *Ibey* because that court found that the ATDS allegations in the complaint had insufficient factual support in part because the text message did not appear to be random. (Motion at 10.) The facts of *Ibey* are readily distinguishable, however, because in that case the plaintiff had opted in to receive text messages and then changed his mind and opted out. *Ibey*, 2012 WL 2401972, at *1. The defendant then immediately sent an opt out "confirmation" text confirming that it had received the plaintiff's

---

[1] WhisperText argues that the use of a long code does not, by itself, mean that an ATDS was used to send the text messages. (Motion at 10-11.) But WhisperText concedes, as it must, that a long code can be used to send text messages, so any discussion as to whether the long code used by WhisperText was part of an ATDS is a fact that can only be determined in discovery and addressed on the merits.

[2] *Knutson v. Reply!, Inc.*, No. 10-CF-1267-BEN(WMc), 2011 WL 291076 (S.D. Cal., Jan. 27, 2011), is another case where the plaintiff simply "nakedly" asserted the requirements of an ATDS under the TCPA without any supporting facts. *Id*. at *2. The court found that, unlike in *Kramer*, there were no facts alleged that in any way supported the use of an ATDS. *Id*. As discussed above, Plaintiff's Complaint is substantially similar to *Kramer*, with sufficient facts alleged to make it plausible that an ATDS was used by WhisperText to send the same text messages to every contact of every one of its new customers.

opt out message and would no longer send him additional text messages.  *Id*.  Thus, the

allegedly offending text was sent in direct response to a text received by the plaintiff himself.

In the instant case, there is simply no suggestion that Plaintiff, or any other class member for

that matter, requested to receive any text message from WhisperText.  (FAC ¶ 20.)  Unlike

the plaintiff in *Ibey*, Plaintiff had no previous relationship with WhisperText, did not request

text messages from WhisperText, and never sent any message to WhisperText.

WhisperText's argument that the messages only went to its customers' own contacts

is besides the point—the text messages were sent by WhisperText using WhisperText's and

its agents' equipment and using WhisperText's telephone number.  The text recipients were

not friends or customers of WhisperText; they were individuals that WhisperText hoped

would become future customers of WhisperText's product.  The TCPA has never been

interpreted to require that the messages be sent to completely random individuals; using an

automated system to deliver text messages to an uploaded list of hundreds or thousands of

predetermined numbers has always been considered an ATDS.  *See, e.g., In re Rules &*

*Regulations Implementing the TCPA*, 18 FCC Rcd. at 14091-92; *see also Sterk v. Path, Inc.*,

No. 13-cv-2330, at 9-11 (May 30, 2014 Order) (N.D. Ill.) (attached hereto as Exhibit A.)

Plaintiff is not suggesting that the recipients of WhisperText's messages were completely

random.  Rather, WhisperText clearly harvested the information of its customers' "contacts"

and then sent them generic text messages asking them to join the service.  The messages did

not identify the recipient's name and, while not necessarily a random spam advertisement,

the message sent to Plaintiff was clearly not a single text message sent to a single, specific

individual by another individual.  *See, e.g., Sterk* at 9-11.

*Daniels v. Community Lending, Inc.*, No. 13-cv-488-WQH-JMA, 2014 WL 51275

(S.D. Cal. Jan. 6, 2014), is also inapposite.  *Daniels* was a debt collection case where the

court found that the complaint contained nothing more than a "formulaic recitation" of the

elements of a TCPA claim.  *Id*. at *5.  In that case, however, there were multiple text

messages alleged by the plaintiff, and the court noted that, while the messages were fairly

1    impersonal, they were not identical and were, instead, sufficiently different such that it would

2    be plausible that they were "done by hand." *Id*.  In the instant case, only one text message is

3    being alleged, and there is simply no basis in the pleadings to suggest that this impersonal

4    message sent to Plaintiff was different than the messages sent to other members of the class

5    such that it could in any way be thought that the messages were personalized and "done by

6    hand."  These messages were generic, likely identical, and all sent from the same number

7    using the same process.  In short, unlike the *Daniels'* court's analysis, these messages were

8    almost certainly not "done by hand."

9        The allegations in the Complaint are plainly sufficient to put WhisperText on notice

10   of the basis for the claim that an ATDS was used and to suggest that it is more than plausible

11   that an ATDS was used to send the text messages.  Nothing more is needed at the pleadings

12   stage, and discovery will reveal the details of the equipment used by WhisperText to send the

13   messages.  After the completion of discovery, WhisperText is free to argue on the merits at

14   summary judgment that it did not use an ATDS to send the messages.  But at this point,

15   Plaintiff has clearly met his burden, and the Motion to Dismiss should be denied.[3]

16   **II.     The Court Should Decline To Invoke The Doctrine Of Primary Jurisdiction**

17       WhisperText next asks the Court to stay Plaintiff's entire case based on the filing of

18   petitions before the FCC submitted by unrelated entities in unrelated cases.  WhisperText's

19   argument fails.  First, the primary basis for WhisperText's attempt to stay the case is the

20   proper interpretation of an ATDS.  But the definition and interpretation of an ATDS in a

21   TCPA case is a relatively straightforward issue that has been addressed by the FCC and has

22   been ruled on by many courts throughout the country, including courts within the Ninth

---

23   [3] In the event that the Court finds that Plaintiff's claims are in any way insufficient under
24   Fed. R. Civ. P. 8, Plaintiff respectfully requests leave to amend to add further detail or
     otherwise take such steps required to cure any defects found by this Court. Courts should
25   "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see Doe v.
     U.S.*, 58 F.3d 494, 497 (9th Cir. 1995) (plaintiff should be given leave to amend unless it is
26   clear that the complaint cannot be cured by different or more detailed allegations);
     *Qarbon.com Inc. v. eHelp Corp.*, 315 F.Supp.2d 1046, 1048 (N.D. Cal. 2004).

27

28

Circuit.[4]  WhisperText's efforts to stay the case under the guise of having the use of an

ATDS interpreted in this particular context is not the type of issue of first impression for

which the primary jurisdiction doctrine is reserved.  Second, WhisperText has provided no

basis whatsoever for this Court to conclude that the FCC is going to issue a ruling on these

issues at all, much less a ruling in the foreseeable future that would directly impact this case.

Additionally, Plaintiff and the class would suffer significant prejudice if forced to await FCC

action for an indeterminate amount of time, while WhisperText exaggerates the

"efficiencies" that would be achieved by staying this case prior to conducting any

discovery—discovery that would inform the parties and the Court as to what equipment was

actually used to send the text messages at issue.

A.      **Primary Jurisdiction Should be Invoked Only in Limited Circumstances.**

As an initial matter, the doctrine of primary jurisdiction "does not require that all

claims within an agency's purview be decided by the agency."  *Brown v. MCI WorldCom*

*Network Services, Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002).  Nor is the doctrine intended "to

secure expert advice for the courts from regulatory agencies every time a court is presented

with an issue conceivably within the agency's ambit."  *Id.* (quoting *U.S. v. General*

*Dynamics Corp.*, 828 F.2d 1356, 1365 (9th Cir. 2002).  Instead, the doctrine of primary

jurisdiction applies in a limited set of circumstances and should only be invoked when an

issue presented in federal court "requires resolution of an issue of first impression, or of a

particularly complicated issue that Congress has committed to a regulatory agency."  *Brown*,

277 F.3d at 1172; *see also Pimental v. Google, Inc.*, No. C-11-02585, 2012 WL 1458179, at

\* 2 (N.D. Cal. Apr. 26, 2012).

In assessing whether to apply the doctrine of primary jurisdiction, courts traditionally

consider whether: (1) the issue is within the "'conventional experiences of judges,' or

---

[4]  WhisperText's second basis for its attempt to stay the case is the proper interpretation of a "sender" of a text message.  The FCC has also already ruled on who can be liable for sending a text message.  *See, e.g, In re Joint Petition Filed by DISH Network, LLC, et. al. for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules*, CG Dkt. 11-50 (FCC May 9, 2013).

'involves technical or policy considerations within the agency's particular field of expertise,' (2) the issue 'is particularly within the agency's discretion,' and (3) 'there exists a substantial danger of inconsistent rulings.'" *Pimental*, 2012 WL 1458179, at * 2 (quoting *Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1048-49 (9th Cir. Sept. 20, 2011)). "The Court must also balance the parties' needs to resolve the action expeditiously against the benefits of obtaining the federal agency's expertise on the issues." *Pimental*, 2012 WL 1458179, at *2 (citing *Nat'l Comm'ns Ass'n, Inc. v. AT&T Co.*, 46 F.3d 220, 223 (2d Cir. 1995) (cited in *Maronyan*, 658 F.3d at 1049)). The ATDS analysis in the instant case does not meet these standards, as the Court is capable of ruling on the merits without staying the case and waiting for theoretical future guidance from the FCC which may never come and which may not even be relevant to this case.

**B.     Plaintiff's Claims Raise Straightforward Issues Under the TCPA, Resolvable Through Discovery and Guidance from Existing FCC Rulings and Applicable Legal Precedent.**

WhisperText does not even attempt to argue that the ATDS issue for which it wants this Court to stay the case is in any way an "issue of first impression" or is even an issue that is "particularly complicated." As previously discussed above, courts across the country, including the Ninth Circuit and courts within this Circuit, as well as the FCC, have addressed the statutory interpretation and application of an ATDS on numerous occasions, demonstrating with little doubt that this issue falls squarely within the "conventional experience of judges." This Court is perfectly capable of interpreting the TCPA, including the FCC rulings and court opinions relating thereto, and need not stay this case. *See, e.g., Meyer v. Portfolio Recovery Associates, LLC*, No. 11-cv-1008-AJB (RBB), 2011 WL 11712610, at *9 (S.D. Cal. Sept. 14, 2011) (rejecting motion to stay in TCPA case because the FCC had already provided guidance on the issue before the court).

WhisperText's reliance on *Fried v. Sensia Salon, Inc.* No. 13-cv-00312, 2013 WL 6195483 (S.D. Tex. Nov. 27, 2013), is misplaced. In that case, a court from the Southern District of Texas, which has had much less experience with TCPA cases than courts within

this District, stayed the case pending resolution from the TCPA. *Id*. at *4. But the facts in that case were very different, as at issue was whether the technology utilized by mobile message aggregators (the conduits between content providers and cellular carriers) constituted an ATDS. The court noted that the case presented a highly complex issue of first impression that would have a massive impact on virtually every TCPA case in the country and would result in "billions upon billions of liability overnight upon [mobile messaging aggregators and their clients]." *Id*. at *3. There is no such technically complex issue with such wide-ranging implications here, as WhisperText has not even offered to explain why the ATDS determination in this case is "complex" or "particularly complicated." To the extent that the ATDS issue in this case even seems complicated, it is because the details of the technology used to send the subject messages is not currently before the Court. The solution is not to stay the case and await guidance from the FCC, but rather to permit discovery to determine precisely how the messages were sent, to whom they were sent, and with what equipment. The Court can even permit WhisperText to renew its motion to stay after such discovery, but at the very least the parties and the Court should be fully informed as to the facts of this case before deciding whether to wait for an FCC ruling, and if one comes, how to apply the FCC ruling to the facts of this case.

1.     <u>Courts have regularly reviewed and interpreted the ATDS provision under the TCPA</u>.

The TCPA unambiguously defines what constitutes an ATDS, and federal courts throughout the country have regularly addressed this issue at the 12(b)(6) stage. *See* Section I(B), *supra*. The standards to be applied in this case have already been well established and have been shown to be well within the competence of the Court. In fact, *Sterk v. Path,* a very recent ruling from the Northern District of Illinois, is strongly on point and unambiguously concludes that a text messaging system like the one utilized by WhisperText constitutes an ATDS. *See Sterk,* May 30, 2014 Order, at 9-11. In *Sterk,* a TCPA case involving an unsolicited text message, the court ruled on a motion for summary judgment after the parties were permitted to conduct limited discovery on the issue of whether the text message was

transmitted via an ATDS.  *Id*. at 2.  Like WhisperText, the defendant in that case was a large

social network and a new customer of the network would make his/her phone contacts

available to the defendant, which would then be uploaded to the defendant's system, and the

contacts of the new customer would receive text messages from the defendant.  *Id*. at 9.  The

court reviewed FCC rulings and found that the FCC has already issued decisions "stating that

an ATDS may include equipment that automatically dials numbers from a stored list without

human intervention, even when the equipment lacks the capacity to store or produce

telephone numbers to be called, using a random or sequential number generator."  *Id*.  The

court analyzed the facts produced in discovery and found that it was undisputed that the

defendant acquires a stored list of phone numbers from its customers and that the defendant's

agent used automated equipment to make calls from that list.  *Id*. at 10.  The court noted that

the FCC has found that a predictive dialer, which makes calls from a database of numbers,

constitutes an ATDS, and found that the process by which the text messages were sent was

"comparable" to a predictive dialer and, thus, constituted an ATDS as defined by the FCC:

> The undisputed facts show that the equipment used by [defendant], which makes
> calls from a stored list without human intervention is comparable to the
> predictive dialers that have been found by the FCC to constitute an ATDS.  The
> uploading of call lists from [defendant's] users is essentially the same as when a
> call list is entered by a telemarketer in a database.  It is the ultimate calling from
> the list by the automated equipment that is the violation of the TCPA.

*Id*. at 11; *see also Griffith v. Consumer Portfolio Serv., Inc.*, 838 F.Supp.2d 723, 727 (N.D.

Ill. 2011) ("Even assuming that [defendant's equipment can only [automatically dial

numbers stored in a file], and cannot generate and dial random or sequential numbers, it is

still an 'automatic telephone dialing system.'")  The court's analysis in *Sterk* was

straightforward: the court considered the facts generated from the targeted discovery and

analyzed those facts in light of multiple FCC rulings and numerous court cases interpreting

the use of an ATDS.  Like the *Sterk* court, this Court can and should permit the parties to

conduct discovery to determine in detail how the relevant messages were sent and then

analyze those facts in light of the vast amount of FCC rulings and court cases that have

already addressed the issue.  Staying this case is unnecessary and unwarranted.

In short, because resolution of WhisperText's claims will not require the Court to delve into "particularly complicated" issues of first impression that would solely fall within the unique competence of the FCC, the primary jurisdiction doctrine does not apply.  *See Pimental*, 2012 WL 1458179, at *3 (denying motion to stay in similar TCPA case where defendant sought guidance from FCC on interpretation of ATDS, finding: "Interpretation of these statutory terms do not require the FCC's policy expertise or specialized knowledge and are matters safely within the conventional experience of judges.  Indeed courts and the FCC have interpreted these statutory terms in the past.")

2.  <u>WhisperText has produced evidence in its Motion that further supports a finding that an ATDS was used.</u>

The legal issues in the instant case may be particularly easy to address, not only because the recent *Sterk* decision is substantially on point, but also because WhisperText has introduced evidence in the record that effectively admits the use of an ATDS here.  The DePue Declaration attached to WhisperText's Motion (Dkt. 25-1) both provides further factual support for Plaintiff's ATDS allegations and also makes it abundantly clear that any future FCC ruling would be unlikely to prevent a finding that an ATDS was used in this case.  In his Declaration, Mr. DePue states:

> For a brief period of time, the Whisper App allowed Android users to send text message invitations to selected friends and contacts anonymously. For such messages, the user-initiated invitations were routed through a third-party communications service provider and then delivered using a ten-digit telephone number registered to WhisperText.

(Dkt. 25-1 at ¶ 6.)  The fact that the text messages were routed through a separate entity – and not directly from WhisperText or from WhisperText's customers – and that such messages were delivered using a dedicated telephone number registered to WhisperText provides further factual support demonstrating that the messages were sent en masse using an automated text messaging system without direct human intervention as opposed to being sent, for example, by an individual inputting specific numbers into a phone.  Any ruling from the FCC will not likely influence a finding as to the use of an ATDS in this case and, regardless, this Court is amply qualified and capable to rule on the issue.

3.   <u>WhisperText provides no basis for the Court to conclude that any forthcoming ruling from the FCC would be relevant to this case.</u>

WhisperText goes to great lengths to summarize the petitions currently pending before the FCC, explaining that the petitions all involve efforts to convince the FCC that an ATDS should require the capacity to store or generate sequential or randomized telephone numbers *at the time the calls were made.* (Motion at 5-7.) As an initial argument, WhisperText's suggestion that the FCC needs to clarify this "current capacity" argument for users of automated text equipment is really just a red herring; all text messages that are not sent from one individual to another (e.g., person-to-person, from one individual's phone to another individual's phone), and that do not involve an individual message being drafted and sent by a person, must be sent using an ATDS. The "current capacity" distinction simply doesn't apply to automated text messages, since automated or computerized text message systems that transmit multiple text messages from a single source to multiple recipients are all – by the very definitions contained in the TCPA and in FCC regulations – sent with an ATDS and all, by their very nature, must have such "current capacity."

But even assuming the FCC decides to issue a ruling on the need for such "current capacity" in order to constitute an ATDS, such a ruling would only be relevant if the messages at issue in this case were sent using equipment that had the capacity to store or generate sequential or randomized telephone numbers *and* if such equipment did <u>not</u> have such capacity at the time the text messages were sent. That is, if the equipment at issue in this case did not have *any* such capacity, then the FCC ruling would be irrelevant, and WhisperText would likely seek to move for summary judgment. If the equipment at issue had such capacity both generally *and* at the time the messages were sent, then the FCC ruling would also be irrelevant, since the FCC ruling could only confirm that WhisperText was utilizing an ATDS. Consequently, in order for WhisperText to argue in good faith that any FCC ruling would even be relevant to this case, the equipment used to send the subject messages must generally have the capacity to store or generate sequential or randomized

telephone numbers but must have lacked such capacity at the time the messages were actually sent. Without discovery, however, we simply don't know if that's the situation with which we're dealing.

What we do know is that by asking the Court to stay this case and await a ruling from the FCC, WhisperText is effectively admitting that the subject text messages were sent using an ATDS as that term has already been defined by the FCC (i.e., using equipment that generally has the capacity to store or generate sequential or randomized telephone numbers). As discussed in Section I(B) above, the equipment used to send the subject text messages undoubtedly had the "current capacity" referenced in the petitions cited by WhisperText, so the Court could easily determine that issue without any further guidance from the FCC. *See, e.g., Griffith*, 838 F.Supp.2d at 727, n.2 (noting that an ATDS clearly exists when a "dialer," and not an individual, makes a call). To the extent this Court is even willing to consider seeking guidance from the FCC, then discovery would still be needed to assess the equipment utilized to send these text messages. If the equipment actually had such "current capacity," then any FCC ruling would be irrelevant and a stay would be futile. At this point, there is simply no basis to conclude that a ruling from the FCC would be relevant and, thus, there is no basis to conclude that a stay would be warranted.[5]

**C.    The FCC Has Already Addressed "Group Texting" Applications and Will Not Contradict Itself on the Issue of ATDS.**

On March 27, 2014, the FCC issued a Declaratory Ruling in a matter involving the TCPA, entitled *In re GroupMe, Inc./Skype Communications S.A.R.L. Petition for Expedited Declaratory Ruling*, CG Dkt. 02-278, FCC 14-33 (March 27, 2014) (the "March 27 FCC Ruling") (attached hereto as Exhibit B.) The issue before the FCC involved the propriety of a "group messaging" application in which the defendant sent text messages to all members of

---

[5] WhisperText is effectively arguing that any TCPA defendant could invoke the primary jurisdiction doctrine based on any proceedings pending before the FCC, regardless of whether the proceedings before the FCC were even likely to impact the case at hand. The primary jurisdiction doctrine has never been used, and should not be used, to permit such drastic and inefficient results.

a "group" created by a customer of the defendant.  More specifically, the FCC addressed the situation where an individual signs up for a group texting service, where that individual sends his/her contacts to the mobile app entity, and where the mobile app entity then sends text messages to that individual's contacts without that mobile app entity first obtaining the prior express consent to receive such messages.  The FCC ruled that the mobile app entity can rely on the representations of purported consent from its customer/intermediary but that the mobile app entity is ultimately liable if any of those people, in reality, did not consent to receive such messages.  In other words, the FCC found that consent can be obtained and conveyed via intermediaries but that the mobile app provider is liable under the TCPA if it turns out that any of the purported consent was invalid.  (*Id*. at ¶ 12.)  This March 27 FCC Ruling is relevant here because it demonstrates that the FCC is not likely to backtrack from its very recent ruling and now find that a mobile app entity such as WhisperText is not the "sender" of the text message or that an ATDS was not used in a case such as this.

           1.     <u>The March 27 FCC Ruling makes it clear that WhisperText can be held liable for the text messages at issue in this case.</u>

The issue of consent is not before this Court in WhisperText's Motion because the March 27 FCC Ruling makes it abundantly clear that a mobile app entity violates the TPCA if messages are sent without the consent of the text recipients.  (March 27 FCC Ruling at ¶¶ 11-12.)  In reaching that determination, the FCC stated that the TCPA permits "a [group texting mobile app provider] to send such autodialed text messages based on the consent obtained and conveyed by an intermediary, with the caveat that if consent was not, in fact, obtained, the sender such as [the group texting mobile app provider] remains liable."  (*Id*. at ¶ 11.)  The FCC further noted that, for purposes of its ruling, it was assuming without deciding that that the petitioner was using an "autodialer" to send the messages at issue there.  (*Id*. at ¶ 1, n.2.)  It is simply illogical for the FCC to hold that a group texting service provider such as WhisperText or GroupMe is liable for sending text messages without consent while somehow later ruling that the same provider could escape liability because it did not "send"

the message.  In short, the FCC's March 27 Ruling presupposed that the group texting provider – a mobile app entity like WhisperText – was the sender of the message.

Additionally, while the FCC did not expressly reach the issue as to whether an ATDS was used in its March 27 Ruling, it makes no practical sense for the FCC to have made such an extensive ruling on the issue of consent if it somehow believed that group texting mobile app providers do not use an ATDS when sending text messages.  Of course, Plaintiff is not suggesting that the March 27 FCC Ruling definitively addressed the ATDS issue, but a reasonable conclusion is that the FCC "at [its] discretion" (*id*.) did not specifically address the ATDS issue in that ruling both because the issue of the ATDS has already been interpreted and explained by the FCC and by courts throughout the country, and also because the FCC assumes that group texting applications do, in fact, utilize an ATDS.  Either way, the March 27 FCC Ruling suggests that the FCC is <u>not</u> likely to limit the definition of an ATDS in a manner that would render its March 27 Ruling largely irrelevant.

> 2.   <u>WhisperText's partner who sent the subject text messages is the same entity that sought to stay similar litigation and was denied relief by the FCC.</u>

In the DePue Declaration, WhisperText admits that text messages sent to the putative class members were routed through a third-party communications provider.  (Motion at 4.) The vendor used by WhisperText was an entity named Twilio, Inc. ("Twilio").  Twilio is the same entity that sought, and received, a stay in the case *Glauser v. Twilio, Inc.*, No. 13-cv-2584-PJH, 2012 WL 259426 (N.D. Cal. Jan. 27, 2012), a case relied upon by WhisperText in its Motion.  That case was stayed pending a ruling from the FCC, which eventually materialized 26 months later in the form of the March 27 FCC Ruling.  After the stay was entered in the *Glauser* matter, Twilio filed Comments with the FCC explaining the technology that it provides and asking the FCC to adopt the ATDS "current capacity" definition discussed above and to permit senders of text messages to avoid TCPA liability if they rely on the purported consent obtained by intermediaries.  *See Comments of Twilio Inc. in Support of GroupMe, Inc. Petition for Declaratory Ruling*, CG Dkt. 02-278 (August 30,

2012) (attached hereto as Exhibit C.)  As seen in the March 27 FCC Ruling, the FCC declined to adopt the ATDS definition advocated by Twilio and further ruled that, while senders of text messages may be permitted to rely on the consent procured by intermediaries, the sender may not avoid TCPA liability if such purported consent is invalid.  It is noteworthy, therefore, that the company that had its position ultimately "rejected" by the FCC is the same company that served as WhisperText's partner through which the subject text messages were routed.

> **D.    The FCC Will Not Further Address Group Texting Applications, and May Not Issue Any Ruling Related to Any Issues Relevant to This Case.**

WhisperText states that there is now pending before the FCC four separate petitions for expedited declaratory ruling.  (Motion at 3.)  But the FCC always has petitions and comments before it, and the existence of such petition and comments in no way obligate the FCC to respond in any particular way.  For example, the TextMe petition referenced by WhisperText was not in response to an action proposed by the FCC; rather, it was based on the defendants in the TextMe litigation requesting that the FCC rule on a question of law that impacts their pending lawsuit.  The FCC can solicit public comments that it may or may not consider, but that is a far cry from the situation where the FCC issues a Notice of Proposed Rulemaking.  WhisperText asks this Court to stay this case "pending resolution of the four petitions," but that wrongly implies that the FCC is obligated to "resolve" the issues identified in those petitions in the first place.  Indeed, WhisperText does not actually provide any reason – other than its own hope – that the FCC will issue any substantive ruling on these issues, much less a ruling anytime soon.

The only support offered by WhisperText for its argument that the FCC will address the four petitions in an expedited manner is the comments from FCC Commissioner Michael O'Rielly.  (Dkt. 25-11.)  WhisperText grossly exaggerates the import of Commissioner O'Rielly's comments.  To be sure, this was not an official statement by the FCC, or even by Commissioner O'Rielly, as to how the FCC will be proceeding.  Rather, this was an individual blog entry in which Commissioner O'Rielly states that he believes the TCPA

needs to be clarified. (Dkt. 25-11.) And this blog entry does not even address the specific ATDS or text "sender" issues that WhisperText hopes will be resolved by the FCC. Rather, the blog entry merely shows Commissioner O'Rielly lamenting the fact that the TCPA rules are not clear and that TCPA lawsuits have increased in the past year. At best, this blog entry reveals that Commissioner O'Rielly hopes that the FCC sometime generally in the future will provide some guidance on a whole host of issues. There is simply <u>nothing</u> in this blog that should lead this Court to conclude that the FCC is likely to rule on the four specific petitions referenced by WhisperText anytime in the foreseeable future. WhisperText's unsupported suggestion that the FCC will soon be ruling on these issues is mere "pie-in-the-sky" speculation and an unsound basis for putting an indefinite hold on a class action lawsuit affecting thousands of individuals.

### E.    A Stay is Not Required to Permit Uniform Administration of the TCPA, as the FCC has Already Spoken on the Subject of Group Texting Applications Such as Defendant's.

WhisperText next argues that a stay is necessary to permit the FCC to make its ruling and, thus, avoid any court rulings "potentially at odds" with the FCC's determinations regarding those issues. (Motion at 14-15.) This is absurd. WhisperText seems to forget that it is the province of the courts to apply the law and that, despite the FCC being constantly inundated with petitions on various issues involving the TCPA, courts continue to issue rulings, some of which conform to the FCC's conclusions and some of which do not. The court system simply cannot shut down because someone in a different case has asked the FCC to opine on an issue that may not even be relevant to this case. This Court need not stay this case simply because another court in a different case involving different actors and potentially different technology has done so.

Because this Court is simply being asked to analyze and apply established judicial and FCC precedent and to interpret unambiguous statutory language relating to the TCPA's ATDS requirements, WhisperText's reliance on *Clark v. Time Warner Cable*, 523 F.3d 1110 (9th Cir. 2008), is misplaced. In *Clark*, the plaintiff brought suit under 47 U.S.C. § 258 after

the defendant switched her telephone service without consent. At the time, it was unclear if such activity was prohibited for VoIP (Voice over Internet Protocol) providers, so the FCC issued a Notice of Proposed Rulemaking seeking comment about how to regulate VoIP providers, including whether the conduct alleged by the plaintiff would even apply to VoIp providers. *Id*. at 1113-14. The Ninth Circuit approved the referral to the FCC under the doctrine of primary jurisdiction because the FCC was "actively considering" the precise issue presented in the *Clark* case. *Id*. at 1114. The Ninth Circuit found that to be an issue of first impression and believed that a ruling could threaten the FCC's "uniform regulatory framework." *Id*. at 1115. Unlike *Clark*, the issues in the instant case are not issues of first impression and do not threaten any uniform regulatory framework. Rather, this Court need only interpret the language of the TCPA and apply relevant FCC and judicial precedent— functions that are well within the judiciary's competence.

### F.  A Stay Would Not Promote Efficiency in This Case.

WhisperText asserts that a stay will "promote efficiency" in this case by permitting this Court to better "target" the discovery in this case. (Motion at 15.) However, there is no basis to believe that ATDS-related discovery would be anything other than targeted as to the equipment used to send the text messages at issue. Besides, the Court on its own could find ways to limit or target discovery as appropriate and if necessary. WhisperText further suggests that a certain ruling by the FCC could ultimately render class certification inappropriate in this case. (Motion at 15-16.) This argument is a red herring. First, it is an inappropriate argument at the pleadings stage, although WhisperText is welcome to make such an argument in response to a pending class certification motion. Second, there is no reason to believe at all that any forthcoming ruling by the FCC would in any way impact the ability of Plaintiff to certify a class in this case. The question is not whether WhisperText's customers sent their contacts a text message using an ATDS, but rather whether WhisperText itself sent those contacts a text message using an ATDS. As alleged in the Complaint, it was WhisperText that sent the message. (FAC ¶ 29.) The DePue Declaration makes clear that

the messages were sent through WhisperText's third-party agent using WhisperText's own number.  (Dkt. 25-1 at ¶ 6.)  Similar to the social networking defendant in *Sterk*, WhisperText automatically uploaded the destination numbers (i.e., the customer's contact list) to the vendor who then transmitted the messages to those numbers.  The customer does nothing other than permit WhisperText to harvest his/her contact list, which WhisperText then uploads to its third-party vendor and asks the vendor to transmit the messages to the numbers on the list.  The details, of course, will be determined in the discovery process, but the point here is that any future FCC ruling would have no bearing on class certification issues, since the phones used by WhisperText's customers were not responsible for actually sending the messages.  WhisperText is clearly reaching for ways in which an FCC ruling could theoretically influence this case.  The Court should avoid such unwarranted speculation.

The *Pimental* court's analysis on the issue of case "efficiency" is instructive.  In that case, the court rejected the stay request, noting that the defendants had offered "insufficient evidence that the FCC will take up [the relevant] issues immediately" and further noting that the summary judgment deadline was six months away and that the issues the defendant believed the FCC would rule on had not yet even formally come before the court:

> The deadline for summary judgment motions to be heard is [six months away].  Jury trial is set to commence [10 months from the court's issuance of its ruling].  If, as Defendants represent, the FCC is poised to rule on these issues, then the FCC will have made a decision before the issues are presented to the Court or a jury.  At this point, however, the Court has not been asked to define these terms and if the FCC actually is poised to rule on the issues, then the Court will not need to decide these issues.  However, the parties need to conduct discovery to obtain the facts and expert opinions necessary, so that once these issues are decided by the FCC or the Court, the Court can apply the undisputed facts to the law on motion for summary judgment, or a jury can find those facts at a trial on the merits.  A stay will not permit the parties to obtain the discovery necessary to resolve the factual disputes Defendants raise in their Answer and Affirmative Defenses.

*Pimental*, 2012 WL 1458179, at *5.  The *Pimental* court concluded that it was "reluctant to stay this proceeding pending a determination by the FCC since there is no indication that the FCC has taken up or will take up the issues."  *Id*.  The court further noted:

> If [the pending related FCC petition] for expedited ruling is acted upon, then the parties can bring it to the Court's attention.  The Court leaves open the possibility that after further discovery and development of the factual record, referral to the FCC may be appropriate.   At this point, however, it is not necessary or appropriate to stay the action under the doctrine of primary jurisdiction.

*Id.*[6]  Here, even if the FCC rules precisely as WhisperText hopes that it does, and even if WhisperText is emboldened to move for summary judgment based on such an FCC ruling, Plaintiff will still be entitled to take discovery, and the Court will still need to be presented with the facts relating to the technology used to send the subject messages in order to properly assess the impact that such an FCC ruling would have on this case. There is no point in waiting months or even years to conduct such obviously important discovery; the better approach would be to move forward with this case and assess the status of the FCC's decision-making, if necessary, at a later point in time.

### G.   Plaintiff and the Putative Class Would be Prejudiced by a Stay.

WhisperText makes no argument that it would suffer any inequity or hardship if it were actually forced to defend this action.  This failure to demonstrate any hardship or inequity – other than the generic prejudice that would result to any defendant in having to defend a case on the merits as opposed to being entitled to just sit and wait – is significant to the analysis of whether this case should be stayed.  In addition to the primary jurisdiction factors set forth above, a court should also take into consideration "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Natural Resources Defense Council v. Norton*, No. 5-cv-1207-OWW-LJO, 2007 WL 14283  (E.D. Cal. Jan. 3, 2007) (quoting  *CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir.1962).  The Ninth Circuit has explained that "[a party seeking] a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone

---

[6] The March 27 FCC Ruling was eventually issued approximately two years after the *Pimental* court rejected the motion to stay.

else." *Norton*, 2007 WL 14283, at *14 (quoting *Lockyer v. Mirant Corp.,* 398 F.3d 1098, 1109 (9th Cir.2005)).  In *Lockyer,* the defendant failed to make out a clear case of hardship or inequity.  *Id.* at 1112-13. The Ninth Circuit held that "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity[.]"  *Id.* (internal citations and quotations omitted).

WhisperText has offered no real argument that it would be unreasonably prejudiced by moving forward with this case, other than the "efficiencies" that would be achieved by waiting for a hypothetical future ruling from the FCC.  As set forth in Sections II(E-F), above, those hypothetical efficiencies are at best greatly exaggerated, if not based on a false premise altogether.  On the other hand, the (potentially very long) delay sought by WhisperText would threaten the ability of Plaintiff to prosecute this action on his own behalf and on behalf of the putative class members.  As detailed above, there is simply no reason to believe that the FCC will issue a ruling that would directly impact this case anytime in the foreseeable future, if anytime at all.  Staying this case would do nothing more than delay this action unnecessarily, which would, itself, create a "standstill" in the development of TCPA law and put in jeopardy the privacy rights of future consumers, including the rights of Plaintiff and the putative class members to prosecute this action.

## CONCLUSION

For all of the foregoing reasons, Plaintiff Tony McKenna respectfully requests that this Honorable Court enter an Order (i) denying WhisperText's Motion to Dismiss Amended Complaint or, in the Alternative, Stay Proceedings; (ii) requiring WhisperText to file an answer to Plaintiff's First Amended Class Action Complaint; and (iii) awarding such other and further relief as the Court deems equitable and just.

Respectfully submitted,

Dated:  June 26, 2014                    TONY MCKENNA, individually and on behalf of a class of similarly situated individuals

By: /s/ Evan M. Meyers
     Evan M. Meyers (*pro hac vice*)

David C. Parisi (SB #162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SB #188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
212 Marine Street, Ste. 100
Santa Monica, CA 90405
Tel: (818) 990-1299
Fax: (818) 501-7852

Evan M. Meyers (admitted *pro hac vice*)
emeyers@mcgpc.com
MCGUIRE LAW, P.C.
161 N. Clark Street, 47th Floor
Chicago, IL 60601
Tel:  (312) 216-5179
Fax: (312) 275-7895

David Pastor (admitted *pro hac vice*)
dpastor@pastorlawoffice.com
PASTOR LAW OFFICE, LLP
63 Atlantic Avenue, 3d Floor
Boston, MA 02110
Tel:  (617) 742-9700
Fax:  617-742-9701

Preston W. Leonard (admitted *pro hac vice*)
pleonard@theleonardlawoffice.com
LEONARD LAW OFFICE, LLP
139 Charles St., Suite A121
Boston, MA 02114
Tel: (617) 329-1295

*Attorneys for Plaintiff Tony McKenna and the Putative Class*

1

2

### CERTIFICATE OF SERVICE

3       The undersigned certifies that, on June 26, 2014, I caused the foregoing *Plaintiff's*

4   *Memorandum in Opposition to Defendant's Motion to Dismiss, or in the Alternative, to Stay*

5   *Proceedings* to be electronically filed with the Clerk of the Court using the CM/ECF system,

6
    which will send notification of filing to counsel of record for each party:
7

8   RODGER COLE (SB# 178865)
    rcole@fenwick.com
    TYLER G. NEWBY (SB# 205790)
9   tnewby@fenwick.com
    FENWICK & WEST LLP
10  555 California Street, 12th Floor
    San Francisco, CA 94104
11

12  BRADLEY T. MEISSNER
    bmeissner@fenwick.com
    FENWICK & WEST LLP
13  1191 Second Avenie, 10th Floor
    Seattle, WA 98101
14

15

16                                          /s/  Evan M. Meyers

17

18

19

20

21

22

23

24

25

26

27

28