David C. Parisi (SB #162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SB #188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
212 Marine Street, Ste. 100
Santa Monica, CA 90405
Tel: (818) 990-1299

*Attorneys for Plaintiff*
[Additional counsel appear on signature page]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| TONY MCKENNA, individually and on behalf of a class of similarly situated individuals, <br><br> Plaintiff, <br><br> v. <br><br> WHISPERTEXT, LLC, a Delaware limited liability company, and WHISPERTEXT, INC., a Delaware corporation, <br><br> Defendants. | Case No. 14-cv-00424-PSG <br><br> **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS FOURTH AMENDED COMPLAINT** <br><br> Hearing Date: June 30, 2015 <br> Hearing Time: 10:00 a.m. <br> Courtroom 5, 4th Floor <br><br> Magistrate Judge Paul Singh Grewal |

## TABLE OF CONTENTS

I.    **INTRODUCTION** ...................................................................................1

II.   **LEGAL STANDARD** .........................................................................2

III.  **ARGUMENT** ......................................................................................3

     **A.**    **The FCC 2003 Order Establishing The "Without Human Intervention" Definition Of An ATDS Was Not Limited To Predictive Dialers**......................5

     **B.**    **The Fourth Amended Complaint, Evaluated On Its Face, States A Valid Claim Against Defendants Under The TCPA** ......................................6

          1.   An amended pleading supersedes any prior pleadings and it is improper to use prior allegations to determine the sufficiency of the operative complaint ...............................7

          2.   Plaintiff's Fourth Amended Complaint sufficiently alleges a cause of action under the TCPA ...............................9

     **C.**    **The New Allegations Within Plaintiff's Fourth Amended Complaint Establish That The Text Messages Sent By Defendants Were Sent Without Human Intervention Regardless Of The Existence Of Any Prior Allegations In The Third Amended Complaint** ......................................11

          1.   It is ultimately the dialing of telephone numbers without human intervention that is a violation of the TCPA, regardless of whether a human user is the "but-for" cause of such dialing ...........................12

          2.   Plaintiff's Fourth Amended Complaint clarifies that the WhisperText system dials telephone numbers without human intervention using the Twilio platform ...........................15

          3.   Human conduct that may be a "but for" cause of a number being dialed does not automatically constitute "human intervention." ...............................18

IV.  **CONCLUSION** ...................................................................................20

# TABLE OF AUTHORITIES

Page(s)

**United States Supreme Court Cases:**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)...................................................................................2, 3, 8

**United States Circuit Court of Appeals Cases:**

*Gibson v. U.S.,*
   781 F.2d 1334 (9th Cir. 1986) ........................................................................2

*Johnson v. Riverside Healthcare Sys., LP.,*
   534 F.3d 1116 (9th Cir. 2008) ........................................................................2

*Knievel v. ESPN,*
   393 F.3d 1068 (9th Cir. 2005) ........................................................................6

*Lazy Y Ranch Ltd. v. Behrens,*
   546 F.3d 580 (9th Cir. 2008) ..........................................................................2

*Meyer v. Portfolio Recovery Assocs., LLC,*
   707 F.3d 1036 (9th Cir. 2012) ....................................................................3, 9

*PAE Gov't Servs., Inc. v. MPRI, Inc.,*
   514 F.3d 856 (9th Cir. 2007) ..........................................................................7

*Satterfield v. Simon & Schuster, Inc.,*
   569 F.3d 946 (9th Cir. 2009) ..........................................................................9

*Valadez-Lopez v. Chertoff.,*
   656 F.3d 851 (9th Cir. 2011) ......................................................................1, 7

**United States District Court Cases:**

*Abbas v. Selling Source, LLC,*
   No. 09–cv–3413, 2009 WL 4884471 (N.D. Ill. 2009)...................................10

*Fields v. Mobile Messengers Am., Inc.,*
   No. 12-cv-05160, 2013 WL 6774076 (N.D. Cal. 2013).............................5, 14

*Gardenswartz v. SunTrust Mortgage, Inc.,*
   No. 14-cv-08548, 2015 WL 900638 (C.D. Cal. 2015) ...............................6, 7

*Glauser v. GroupMe, Inc.*,
No. 11-cv-2584, 2015 WL 475111 (N.D. Cal. 2015) ........................................... 5, 18

*Gragg v. Orange Cab Co.*,
995 F.Supp.2d 1189 (W.D. Wash. 2014) ................................................................ 18

*Harnish v. Frankly Co.*,
No. 14-cv-02321, 2015 WL 1064442, (N.D. Cal. 2015) ................................ 3, 6, 10

*Heinrichs v. Wells Fargo Bank, N.A.*,
No. 13-cv-05434, 2014 WL 985558 (N.D. Cal. 2014) ........................................ 3, 9

*Johnson v. Yahoo!, Inc.*,
No. 14-cv-2028, 2014 WL 7005102 (N.D. Ill. 2014) ............................................ 19

*Kazemi v. Payless Shoesource Inc.*,
No. 09-cv-5142, 2010 WL 963225 (N.D. Cal. 2010) ........................................ 8, 10

*Kramer v. Autobytel*,
759 F.Supp.2d 1165 (N.D. Cal. 2010) ................................................................... 10

*Marks v. Crunch San Diego, LLC*,
No. 14-cv-00348, 2014 WL 5422976 (S.D. Cal. 2014) ......................................... 18

*Nunes v. Twitter, Inc.*,
No. 14-cv-02843, 2014 WL 6708465 (N.D. Cal. 2014) ........................................... 5

*Ryabyshchuck v. Citibank (S. Dakota) N.A.*,
No. 11-cv-1236, 2012 WL 5379143 (S.D. Cal. 2012) ..................................... 4, 7, 8

*Salvato v. Ocwen Loan Servicing, LLC*,
No. 12-cv-0088, 2012 WL 3018051 (S.D. Cal. 2012) .............................................. 7

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
782 F. Supp. 2d 1059 (E.D. Cal. 2011) ................................................................... 9

*Sterk v. Path, Inc.*,
46 F.Supp.3d 813 (N.D. Ill. 2014) ..................................................... 13-14, 16-17

*Wahoo Int'l, Inc. v. Phix Doctor, Inc.*,
No. 13-cv-1395, 2014 WL 6810663 (S.D. Cal. 2014) .............................................. 7

*Webb v. Healthcare Revenue Recovery Grp. LLC*,
No. 13-cv-00737, 2014 WL 325132 (N.D. Cal. 2014) ................................... 3, 9, 10

## Statutes and Court Rules:

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ............................... *passim*

1

Fed. R. Civ. P. 8 ...............................................................................................................2

2

**Miscellaneous:**

3

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection*
*Act of 1991, FCC Report and Order, CG Docket No. 02-278* (July 3, 2003) ............... 2, 4-6, 12-14

4

5

*In re SoundBite Communications, Inc. Petition for Expedited Declaratory Ruling, Rules &*
*Regulations Implementing the Tel. Consumer Prot. Act of 1991, FCC Declaratory Ruling,*
*CG Docket No. 02-278* (Nov. 29, 2012) ................................................................. 13, 16

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.     **INTRODUCTION**

Defendants WhisperText, Inc. and WhisperText, LLC's (collectively, "WhisperText" or "Defendants") Motion to Dismiss Fourth Amended Complaint (Dkt. 71) ("Motion to Dismiss") is an exercise in trying to promote semantics over substance.  The Motion to Dismiss virtually ignores the allegations actually set forth in the Fourth Amended Complaint ("Complaint"), and instead revolves solely around the argument that a few words in Plaintiff's Third Amended Complaint ("TAC") constitute an "admission" that should be "fatal" to Plaintiff's Fourth Amended Complaint (Dkt. 68).  Defendants are wrong, and this case should move forward with discovery so that Plaintiff can have the opportunity to prove the specific allegations in the Complaint demonstrating that Defendants' equipment constitutes an ATDS under existing law.

The premise of the Motion to Dismiss is that an allegation in the Third Amended Complaint – that the WhisperText mobile application sends messages to a customer's contacts "at the customer's direction" – somehow proves without the need for any discovery that the unauthorized text message at issue in this litigation was sent with "human intervention" and not through an automatic telephone dialing system ("ATDS"), as required by the TCPA.  By focusing almost exclusively on this allegation that is "superseded" by the Complaint and, thus, technically "non-existent," Defendants seek to cling to the exact same arguments that they made in their previous motion to dismiss (Dkt. 52) so that they can avoid having to confront the fact that Plaintiff's Complaint contains substantially different allegations, the sufficiency of which have to be evaluated by the Court in their own right. *Valadez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011).  Because the operative Complaint sufficiently pleads a claim for relief against Defendants on its face, that alone should warrant denial of Defendants' Motion to Dismiss.

But even if this Court were to accept Defendants' contention that the prior allegation – which was nothing more than a statement that the text messages were sent with the customer's knowledge – was an "admission," the Complaint clarifies that any user

"direction" was limited solely to the creation of a list of numbers to be dialed.  (Complaint ¶¶ 28, 31.)   Furthermore, the Complaint carefully explains how it was ultimately the Twilio application programming interface platform ("Twilio platform") that actually dialed the numbers without human intervention.  (*Id.* ¶¶ 14, 29, 31, 32.)  Defendants are effectively attempting to collapse the distinction between a human user initiating the WhisperText application itself, and the Twilio platform receiving a list of telephone numbers from the WhisperText application and actually *dialing* them without human intervention.  Because the FCC has specifically stated that it is the *dialing* of phone numbers without human intervention that defines an ATDS[1] – regardless of how the list of numbers dialed was created – the Complaint sufficiently alleges that Defendants utilized an ATDS and their Motion to Dismiss should be denied.

## II.     <u>LEGAL STANDARD</u>

Under Rule 8(a)(2), a complaint requires only a "short and plain" statement of the claim showing that the plaintiff is entitled to relief and notifying the defendant of the principal events and the claims it is called upon to meet.  *Johnson v. Riverside Healthcare Sys., LP.*, 534 F.3d 1116, 1122 (9th Cir. 2008); *Gibson v. U.S.*, 781 F.2d 1334, 1340 (9th Cir. 1986) (finding that a plaintiff is not expected "to plead his evidence").  When reviewing a Rule 12(b)(6) motion to dismiss, the court must construe all allegations and any reasonable inferences in the light most favorable to the plaintiff.   *Johnson*, 534 F.3d at 1122. Furthermore, all factual allegations made in the complaint should be accepted as true.  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  A complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

---

[1] *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Report and Order, CG Docket No. 02-278*, at ¶ 132 (July 3, 2003) (hereinafter "FCC 2003 Order" and attached hereto as <u>Exhibit A</u>).

at 678.   Where the complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

## III.   ARGUMENT

Plaintiff brought suit against Defendants for violating 47 U.S.C. § 227(b)(1)(A)(iii) of the TCPA.   Under Section 227(b)(1)(A)(iii), an entity violates the TCPA when it: (1) calls a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227 (b)(1)).[2]   Defendants' Motion to Dismiss does not argue that Defendants had prior express consent to send Plaintiff the invitational text message that he received on his cellular telephone advertising their WhisperText application. Nor do Defendants dispute the factual circumstances surrounding the receipt of the unauthorized message.  As in their prior Motion to Dismiss, Defendants' argument is limited solely to the issue of whether the WhisperText system that dialed Plaintiff's cellular telephone number and sent the text message was an ATDS for purposes of the TCPA—a conclusion Defendants seek to have this Court make without discovery or technical analysis.

Defendants attempt to resurrect the issue of whether the FCC 2003 Order and the FCC's subsequent rulings regarding the definition of an ATDS apply to all equipment or just predictive dialers.  But given this Court's prior order, Judge Davila's recent opinion in the nearly identical case *Harnish v. Frankly Co.*, No. 14-cv-02321, 2015 WL 1064442 (N.D. Cal. Mar. 11, 2015),[3] as well as other court opinions on the issue – some of which are even cited to by Defendants – it is clear that the FCC's rulings defining an ATDS as equipment

---

[2] Although lack of consent is not in dispute in this case, the existence of consent is actually an affirmative defense under the TCPA.  *Heinrichs v. Wells Fargo Bank, N.A.*, No. 13-cv-05434, 2014 WL 985558, at *3 (N.D. Cal. Mar. 7, 2014); *Webb v. Healthcare Revenue Recovery Grp. LLC*, No. 13-cv-00737, 2014 WL 325132, at *4 (N.D. Cal. Jan. 29, 2014).

[3] *Harnish* is a nearly identical case involving invitational text messages from a different social network application defendant.  Defendants' counsel represent the defendant in *Harnish* and filed a nearly identical motion to dismiss in that case.  Judge Davila denied the motion to dismiss and that case is now proceeding in discovery.

that has "the *capacity* to dial numbers without human intervention" clearly apply to the WhisperText system that is at issue here.  (Ex. A at ¶ 132.)

Furthermore, Plaintiff's Complaint sufficiently alleges that Defendants' WhisperText system utilized an ATDS that dialed telephone numbers without human intervention, and the specific allegations in the Complaint supersede any allegations made in the now nullified TAC.  Because "the role of [this] Court is to see whether [the Complaint] contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]'" and not to evaluate which "allegations that were omitted from, or added to, [the Complaint] are meritorious and which [allegations] are unfounded," any prior allegations made in the TAC are not "admissions" that this Court should consider when determining the sufficiency of the Complaint.  *Ryabyshchuk v. Citibank (S. Dakota) N.A.*, No. 11-cv-1236, 2011 WL 5976239, at *3 (S.D. Cal. Nov. 28, 2011).

Finally, even if this Court were to evaluate the Complaint in light of the previous TAC, and treat any allegations within the TAC as binding "admissions" – despite Defendants misinterpreting those allegations – the Complaint still establishes that Defendants violated the TCPA.  By explaining how the component parts of the WhisperText system operate and the limited role of the WhisperText mobile application in actually sending the messages at issue, the Complaint establishes that any human "direction" is limited solely to a customer's willingness to have the application create a list of numbers to be dialed.  By specifically including allegations that it was ultimately the Twilio platform that dialed the telephone numbers without human intervention, the Complaint brings to the forefront the Defendants' flawed attempt to collapse the distinction between a human user initiating the WhisperText application itself, and the WhisperText system utilizing the Twilio platform to dial telephone numbers without human intervention.   The allegations within the Complaint directly implicate the language of the TCPA and the FCC's rulings that establish that it is the *dialing* of telephone numbers without human intervention that is prohibited under the law.  The Motion to Dismiss should be denied.

### A. The FCC 2003 Order Establishing The "Without Human Intervention" Definition Of An ATDS Was Not Limited To Predictive Dialers.

As an initial matter, Defendants attempt to yet again argue that the FCC 2003 Order which established that "the basic function" of an ATDS is "the *capacity* to dial numbers without human intervention" (Ex. A at ¶ 132) was limited solely to "predictive dialers." (Mot. at 8–9.) According to Defendants, a complaint alleging a violation of the TCPA must establish that the calls at issue were placed by a system that has the "statutorily required capacity to store o[r] produce randomly or sequentially generated telephone numbers." (Mot. at 9.) However, this Court, and other judges within this District, have already rejected this extremely limited reading of the FCC 2003 Order and have applied the "without human intervention" standard to equipment that is clearly not a predictive dialer.

In its prior ruling dismissing Plaintiff's TAC, this Court found that "this district has held that the FCC order encompasses more than just the predicative dialer then before it." (Dkt. 63 at 5–6) (citing Judge Chhabria in *Nunes v. Twitter, Inc.*, No. 14-cv-02843, 2014 WL 6708465, at *2 (N.D. Cal. Nov. 26, 2014) and Judge Alsup in *Fields v. Mobile Messengers Am., Inc.*, No. 12-cv-05160, 2013 WL 6774076, at *3 (N.D. Cal. Dec. 23, 2013)).

Additionally, Judge Hamilton in *Glauser v. GroupMe, Inc.*, No. 11-cv-2584, 2015 WL 475111 (N.D. Cal. Feb. 4, 2015) – an opinion relied upon by Defendants – also acknowledged that the FCC 2003 Order extends to the same type of dialing equipment used to send group text messages as in the instant case. 2015 WL 475111, at *1. The court noted that if it "had accepted defendant's argument that random/sequential dialing were indeed required, then this issue alone would warrant the granting of summary judgment." *Id.* at *6. However, the court rejected the defendant's argument and found that it must address "whether its equipment had the capacity to send text messages without human intervention." *Id.* The argument that *Glauser* rejected – that the TCPA requires proof of "random/sequential dialing" – is the same exact argument that Defendants raised in their previous motion to dismiss, and attempt to raise yet again in their renewed motion.

Even more recently, in *Harnish v. Frankly Co.*, Judge Davila similarly held that "[t]he FCC has found that equipment having 'the capacity to dial numbers without human intervention,' including predictive dialers, falls under the definition of an ATDS." 2015 WL 1064442, at *3 (citing Ex. A at ¶ 132). As in *Glauser*, the court in *Harnish* found this definition applicable given almost the exact same allegations as those presented to the Court here involving an unauthorized generic text message invitation to download a mobile messaging application. *Id.* at *1. In no way was "predictive dialing" implicated in the allegations made by the plaintiff in *Harnish*.

As held by a number of cases *within* this District, and as previously acknowledged by this Court, the FCC 2003 Order that established the "without human intervention" definition of an ATDS was never meant to be limited solely to "predictive dialers" and Defendants' attempts to raise this issue yet again should be rejected.

### B. The Fourth Amended Complaint, Evaluated On Its Face, States A Valid Claim Against Defendants Under The TCPA.

It is a basic tenant that "in ruling on a motion to dismiss, courts must 'accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.'" *Gardenswartz v. SunTrust Mortgage, Inc.*, No. 14-cv-08548, 2015 WL 900638, at *4 (C.D. Cal. Mar. 3, 2015) (citing *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)). Defendants, however, argue that instead of evaluating the sufficiency of Plaintiff's Complaint solely based on the factual allegations made within, the Court should treat *prior* allegations made in the previous TAC as "admissions" that it should "consider . . . in evaluating the sufficiency of Plaintiff's Fourth Amended Complaint." (Mot. at 10, 14.) Because it is improper to use prior allegations from a superseded and functionally non-existent pleading to determine the sufficiency of the operative complaint, and because the Complaint as it stands on its own alleges a cause of action under the TCPA, Defendants' Motion to Dismiss should be denied.

1.   <u>An amended pleading supersedes any prior pleadings and it is improper to use prior allegations to determine the sufficiency of the operative complaint</u>.

"It is well established that an amended complaint supersedes the original, the latter being treated thereafter as non-existent." *Valadez-Lopez*, 656 F.3d at 857; *see also Wahoo Int'l, Inc. v. Phix Doctor, Inc.*, No. 13-cv-1395, 2014 WL 6810663, at *2 (S.D. Cal. Dec. 2, 2014) ("It is 'hornbook law' that an amended complaint supersedes the original complaint.") Despite the well established doctrine that an amended complaint renders all prior complaints "non-existent," Defendants nonetheless base almost every argument within their Motion to Dismiss on a single prior allegation made in Plaintiff's previous TAC.  But not only do Defendants fail to cite to any legal authority establishing that an allegation within a prior complaint is an "admission," Defendants fail to fully develop a legal argument as to how and why this Court should use the prior allegations to determine the sufficiency of Plaintiff's Complaint.

As explained by a number of California district courts, the issue with using allegations found within prior complaints to weigh the sufficiency of a superseding pleading goes beyond the simple fact that the prior complaint is legally "non-existent."  The problem is that "[b]y striking or discounting the factual allegations contained in a pleading because they contradict an earlier version, courts would be improperly adjudicating a claim on the merits." *Salvato v. Ocwen Loan Servicing, LLC*, No. 12-cv-0088, 2012 WL 3018051, at *4 (S.D. Cal. July 24, 2012).  Allegations made within a complaint should not be tested against allegations made in prior complaints, but rather "through the normal mechanisms for adjudicating the merits." *Gardenswartz*, 2015 WL 900638, at *3 (citing *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 859 n.3 (9th Cir. 2007)).

In *Ryabyshchuk v. Citibank*, the court dealt with an almost identical situation involving a complaint and first amended complaint that alleged unauthorized text messages received in violation of the TCPA. *Ryabyshchuk*, 2011 WL 5976239, at *1, *3.  The issue presented to the court was whether the alleged text messages were sent without the plaintiff's

"prior express consent" as required by the TCPA. *Ryabyshchuk*, 2011 WL 5976239 at *2. Just as Defendants argue to the Court here, the defendant in *Ryabyshchuk* "argue[d] that one allegation in [the plaintiff's] original complaint defeats his claim." *Id.* at *3. While the plaintiff's original complaint alleged that he "provided his cell phone number" to defendant, the plaintiff's amended complaint "omit[ted] any indication that Plaintiff provided his cell phone number[.]" *Id.*

The court, however, refused to evaluate the sufficiency of the plaintiff's amended complaint based on the prior allegation and did not treat it as a binding "admission." Instead, the court evaluated the plaintiff's amended complaint in its own right and held that "accepting these facts as true, the FAC 'state[s] a claim to relief that is plausible on its face' 'because it plausibly alleges that the two text messages from [the defendant] were received without [the plaintiff's prior express consent].'" *Id.* at *2 (citing *Iqbal*, 129 S.Ct. at 1949; *Kazemi v. Payless Shoesource Inc.*, No. 09-cv-5142, 2010 WL 963225, at *3 (N.D. Cal. Mar. 16, 2010)). The court found that at the motion to dismiss stage "the Court is ill-suited to determine which allegations that were omitted from, or added to, the FAC are meritorious and which one are unfounded." *Id.* at *3. Thus, the court in *Ryabyshchuk* expressly rejected the idea forwarded by Defendants that an allegation within a previous complaint is "meritorious" and should be considered an "admission." Ultimately, the court held that it was "not prepared to say that the allegations in [the plaintiff's] FAC are not plausible based on a single sentence in the original complaint that might turn out to not be contradictory at all." *Id.* at *4.

As in *Ryabyshchuk*, Plaintiff's Complaint should also be evaluated according to whether it states a claim to relief that is plausible *on its face*, rather than based on a single, misinterpreted sentence within a previous, legally superseded pleading. Furthermore, as will be discussed in greater detail in Section III.C.2 below, the allegations in Plaintiff's Complaint do not actually even "conflict" with the allegations in the TAC such that he "'must allege more factual support' to render a claim . . . plausible." (Mot. at 7–8) (citing *Stanislaus Food*

*Prods. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1076 (E.D. Cal. 2011)).  Plaintiff's Complaint does not contradict the TAC, but simply explains that any human intervention is limited to the creation of the list of numbers to be dialed and that the WhisperText system utilizes the Twilio platform to actually dial the telephone numbers without human intervention through a completely separate process.  (Complaint ¶¶ 27–33.)  Thus, it would be improper to weigh the allegations within the Complaint against the supposedly omitted allegations that were contained within the TAC.  Rather, the Court should look to the current operative Complaint and evaluate whether *it*, on its face, is sufficient to state a claim for relief under the TCPA.

> 2.   Plaintiff's Fourth Amended Complaint sufficiently alleges a cause of action under the TCPA.

Plaintiff brought suit against Defendants for violating 47 U.S.C. § 227(b)(1)(A)(iii) of the TCPA.  As previously mentioned, under Section 227(b)(1)(A)(iii), an entity violates the TCPA when it: (1) calls a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  *Meyer*, 707 F.3d at 1043 (citing 47 U.S.C. § 227 (b)(1)).  Plaintiff's Complaint contains sufficient factual allegations to support each element of a TCPA claim against Defendants.

In his Complaint, Plaintiff alleges that on or about December 19, 2013, Defendants sent the following text message to his cellular telephone:

> Someone you know has anonymously invited you to join Whisper, a mobile social network for sharing secrets. Check out the app here: http://bit.ly.HLVr79

(Compl., ¶ 26–27.)  As this Court noted in its previous Order, "The Ninth Circuit has . . . found that text messages constitute calls under the TCPA[.]"  (Dkt. 63 at 2) (citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009)).  Thus the first element is clearly satisfied.

The third element – whether the message was sent without prior express consent – is actually an affirmative defense under the TCPA.  *Heinrichs*, 2014 WL 985558, at *3; *Webb*,

2014 WL 325132, at *4.  Nonetheless, Plaintiff's Complaint states that "[a]t no time did Plaintiff consent to the receipt of the text message identified . . . or any other such wireless spam from Defendants."  (Compl., ¶ 33.)

The only remaining element is that the calls must have been placed by an ATDS.  As this Court similarly acknowledged in its previous Order, "alleged use of 'long codes' to transmit generic messages en masse has been found sufficient to allege the use of an ATDS under the federal pleading requirements."  (Dkt. 63 at 2) (citing *Kramer v. Autobytel*, 759 F.Supp.2d 1165, 1172 (N.D. Cal. 2010); *Kazemi*, 2010 WL 963225, at *2; *Abbas v. Selling Source, LLC*, No. 09–cv–3413, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009)).

Here, Plaintiff's Complaint alleges that Defendants sent a "generic message" that was not personalized and broadly invited every recipient to download Defendants' WhisperText application.  (Compl., ¶ 27.)  Plaintiff's Complaint also alleges that this generic message was "transmitted . . . en masse to a list of telephone numbers" "without human intervention from a long code[.]"  (*Id.* at ¶¶ 28, 43.)  These factual allegations, if accepted as true – as they should be on a motion to dismiss – are sufficient to establish at the pleadings stage that Defendants utilized an ATDS to send the text messages at issue.

Any doubts about the need for Plaintiff to plead any further facts relating to whether there was any human intervention or details about the system used to place the calls have been put to rest by the recent decision in *Harnish*.  In *Harnish* the court was presented with almost identical allegations involving the "mass transmission" of a generic text message invitation to download a mobile messaging application to "cell phones nationwide[.]"  2015 WL 1064442, at *1.  The court found that allegations that the text message was "sent *en masse*," had "generic" and "impersonal" content, and was sent from a "shortcode" was sufficient to allege the use of an ATDS. *Id.* at *3.  While Judge Davila acknowledged the FCC 2003 Order and the definition of an ATDS as "equipment having 'the capacity to dial numbers without human intervention,'" the court found it unnecessary to determine at the pleading stage whether the system had such capacity.  *Id.*

Nor does the Complaint suffer from the same "defect" that this Court found necessitating dismissal of the TAC. By clarifying and explaining exactly how the WhisperText system operates in conjunction with the Twilio platform, and establishing that the Twilio platform automatically dials numbers without any human intervention or "direction" by Defendants' customers, Plaintiff's Complaint forecloses any arguments that the system used by Defendants, as alleged in the operative Complaint, relied on human intervention. (Compl., ¶¶ 28–32.)

Because any prior allegations within the TAC have been superseded by the Complaint, and because it is improper to evaluate the Complaint in light of prior allegations, the Complaint should be subject to the same standard of review as any other newly filed pleading. Under this Court's own findings about the allegations necessary to establish a cause of action under the TCPA, as well as the recent order by Judge Davila in *Harnish*, Plaintiff's Complaint contains sufficient factual allegations to maintain a suit against Defendants under the TCPA, and the Motion to Dismiss should be denied.

**C. The New Allegations Within Plaintiff's Fourth Amended Complaint Establish That The Text Messages Sent By Defendants Were Sent Without Human Intervention Regardless Of The Existence Of Any Prior Allegations In The Third Amended Complaint.**

Defendants reiterate again and again throughout their brief that Plaintiff's "admission" in the TAC, that "[w]hen a new 'customer' downloads the Whisper App . . . [they] are automatically informed by Defendants that 'Whisper will text your friends for you' at the customer's direction," is "fatal to Plaintiff's ability to allege that Whisper used an ATDS, regardless of any intermediate steps that take place before the message is ultimately delivered." (Mot. at 9) (citing TAC ¶ 17). Unable to challenge the allegations in the Complaint on the actual merits, Defendants only cursorily address the new allegations involving the WhisperText system's use of the Twilio platform, hoping that the Court will ignore those allegations and focus solely on the four words in the TAC relating to a customer's knowledge that the application will send invitational text messages to his/her

contacts.  (Mot. at 14.)  However, in their efforts to revisit the TAC and rely solely on this Court's prior dismissal Order, Defendants completely skim over the fact that the new allegations regarding the Twilio platform, as well as those seemingly insignificant "intermediate steps," directly implicate FCC and court rulings regarding the definition of an ATDS, and establish that the text messages at issue were sent without human intervention.

### 1. It is ultimately the dialing of telephone numbers without human intervention that is a violation of the TCPA, regardless of whether a human user is the "but-for" cause of such dialing.

Defendants' argument that their WhisperText system is not an ATDS because the text messages at issue are "initiated by the user" is a misleading attempt to escape liability by improperly collapsing the distinction between user action that triggers the WhisperText application's harvesting of telephone numbers from the user's cellular telephone, and the *actual act* of "dialing without human intervention" that is performed by the Twilio platform—a distinction that is inherent in the very language of the FCC rulings that established the "without human intervention" definition of an ATDS, as well as the FCC's accompanying commentary.  While Defendants seek to have any human action that is the "but for" cause of a telephone number being dialed labeled as "human intervention," such an outcome runs contrary to FCC and court rulings, and would effectively nullify the TCPA. (Mot. at 9.)

The FCC 2003 Order cited by the Ninth Circuit in *Meyer* that established the "without human intervention" definition did so in an effort to further clarify and explain which equipment falls within the definition of an ATDS.  The FCC 2003 Order stated that "[i]t is clear from the statutory language and the legislative history that Congress has anticipated that the FCC, under its TCPA rulemaking authority, might need to consider changes in technologies."  (Ex. A at ¶ 132.)  As a result of the "evolution of the teleservices industry" and changes in the equipment used to place calls, the FCC was presented with the question of what equipment does and does not qualify as an ATDS.  (*Id.* at ¶ 132.)  In its 2003 Order, the FCC exercised its rulemaking authority to answer that question, and in so doing stated that,

ultimately, "[t]he basic function of such equipment, however has not changed—the *capacity* to dial numbers without human intervention.  We fully expect automated dialing technology to continue to develop."  (Ex. A at ¶ 132) (emphasis in original).  Thus, the FCC's language makes it clear that it is the capacity to ***dial*** numbers without human intervention that defines equipment as an ATDS.  The FCC 2003 Order further clarifies that it is ultimately the *dialing* itself that has to occur without human intervention when it comments that the "TCPA does not ban the use of technologies to *dial* telephone numbers . . . [i]t merely prohibits such technologies from *dialing* . . . telephone numbers assigned to wireless services[.]"  (*Id.* at ¶ 133) (emphasis added).

The FCC has also clarified that it is not the manner in which the dialed numbers are *obtained* that determines whether any given equipment is or is not an ATDS.  Rather, it is ultimately whether the equipment has the capacity to *dial* any such numbers without human intervention.  As the FCC stated in a 2012 declaratory ruling, the definition of the term "automatic telephone dialing system" "covers any equipment that has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists."[4]

Direct, on-point caselaw involving similar text message systems as the one alleged to have been used here also supports the conclusion that it is ultimately the dialing of telephone numbers without human intervention that is prohibited by the TCPA.  In *Sterk v. Path*, 46 F.Supp.3d 813 (N.D. Ill. May 30, 2014), the plaintiff, just like Plaintiff in this case, received an "unsolicited promotional text message . . . from [the defendant]" when a user of the defendant's mobile messaging application "chose*"* to upload the plaintiff's cellular telephone number into the defendant's messaging application.  *Sterk*, 46 F.Supp.3d at 815, 819.  The defendant argued on summary judgment that there was human intervention because the text

---

[4] *See In re SoundBite Communications, Inc. Petition for Expedited Declaratory Ruling, Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, FCC Declaratory Ruling, CG Docket No. 02-278*, at 2 n.5 (Nov. 29, 2012) (hereinafter "SoundBite Ruling" and attached hereto as Exhibit B) (emphasis in original).

message was sent only after a user of its messaging application chose to upload the plaintiff's phone number.  *Sterk*, 46 F.Supp.3d at 819.  This is identical to Defendants' argument here that there was human intervention because a human user was the "but for" cause of the message being sent and "direct[s]" the WhisperText application to send an SMS message. (Mot. at 6, 9.)  The *Sterk* court rejected this argument and reiterated that under the FCC rulings "[i]t is the ultimate calling from the list by the automated equipment that is the violation of the TCPA." *Sterk*, 46 F.Supp.3d at 819.

In finding that the system employed by the defendant was an ATDS even though it was "prompted by its users inputting a mobile phone number" (Mot. at 5), the *Sterk* court focused on the language in the FCC 2003 Order, noting that "[t]he FCC emphasized that the main requirement for an ATDS is . . . to be able to 'dial numbers without human intervention.'" *Sterk*, 46 F.Supp.3d at 819 (citing Ex. A at ¶ 132).  The court found that the "uploading of call lists from [the defendant's] users is essentially the same as when a call list is entered by a telemarketer in a database" and that the actions of such users in "choos[ing] . . . to upload their phone contacts . . . merely relates to the *collection* of numbers[.]"  *Id.* (emphasis added).  In denying summary judgment, the court found that it was irrelevant that the telephone numbers were inputted by users of the defendant's messaging application, and focused on the fact that "the equipment used by [the defendant] *made calls* . . . without human intervention" and held that it "is such *calling* that the section of the TCPA at issue in this case covers, not the collection of numbers[.]"  *Id.* at 819–20 (emphasis added).

Similarly, in *Fields v. Mobile Messengers*, the court also cited to the FCC 2003 Order in finding that a text message system was an ATDS.  2013 WL 6774076, at *3.  In particular, Judge Alsup focused on testimony that the defendant's system operates "like predictive dialers" and "receive[s] numbers from a computer database . . . and then *dial[s]* those numbers [without human intervention]" and that "there is no human interaction or intervention involved in *sending* text messages from mBlox's system."  *Id.* (citing Ex. A at ¶

130) (emphasis added).  As made clear by the language of the *Fields* decision, it is the actual "dialing" or "sending" of text messages without human intervention that defines an ATDS.

As the court in *Sterk v. Path* found, and as established by the FCC rulings cited above and supported by the *Fields* decision, the TCPA prohibits the use of equipment that dials telephone numbers without human intervention—regardless of any "prompting" by a human user that creates the list of numbers dialed.

2.   Plaintiff's Fourth Amended Complaint clarifies that the WhisperText system dials telephone numbers without human intervention using the Twilio platform.

The new allegations in Plaintiff's Complaint directly implicate the above FCC rulings and court opinions and eliminate the issues raised by the TAC that this Court previously held required dismissal.  Specifically, the Complaint describes in detail – in as much detail as possible without being permitted any discovery – how the WhisperText system operates and separates out each of its component parts.  By explaining how the WhisperText mobile application itself only has the limited capability to create lists of numbers to be dialed, and that the actual dialing of numbers occurs via the Twilio platform without any human intervention, the Complaint states a cause of action under the TCPA even in light of any prior "admission" by Plaintiff that the user "direct[s]" the WhisperText application.

The Complaint breaks down each step of the process by which the unauthorized text messages at issue were sent.  First, "Defendants' app automatically upload[s] [a] list of phone numbers" "harvested from the cellular phones of its customers[.]"  (Compl., ¶¶ 28-29.)  Second, the list of phone numbers is then "provided . . . to Twilio" whose "API platform" "was preprogrammed  .  .  .  to automatically accept Defendants' provided list of phone numbers" and "permits its customers, including [Defendants], to transmit text messages instantly to thousands of cellular telephones in the nation at virtually any moment."  (*Id.* ¶¶ 15, 29-31.)  Finally, the Twilio platform "transmit[s] Defendants' invitation text message to each phone number on such list without human intervention" "from one or more unique long codes owned and operated by Twilio[.]"  (*Id.* ¶¶ 29, 31.)

1    Thus, the Complaint establishes that the actual WhisperText mobile application that

2  the user interacts with does nothing more than create "calling lists." (*See* Ex. B at 2 n.5.)  As

3  a result, even if this Court were to accept Defendants' contention that Plaintiff has

4  "admitted" that a user initially "directs" the WhisperText application and allows Defendants

5  to harvest his/her contacts, the Complaint clarifies that the only thing that a user *can* actually

6  direct is the collection of telephone numbers by the application itself.  However, as the court

7  in *Sterk* found, and as supported by the FCC 2003 Order and its 2012 ruling, as well as the

8  *Fields* decision, when "users choose through clicking prompts to upload their phone contacts

9  . . . such conduct . . . merely relates to the collection of numbers[.]"  *Sterk*, 45 F.Supp.3d at

10 819.

11    Crucial to the decision here, the Complaint specifically states that the actual *dialing*

12 of telephone numbers, and the sending of the text messages at issue, occurs without any

13 human intervention using the Twilio platform.  (Compl., ¶¶ 31-32.)  Thus, the conduct that is

14 prohibited by the TCPA is disconnected from any user direction or interaction with the

15 WhisperText application that Defendants wish for this Court to focus its attention on.

16 Furthermore, by separating out the role of the Twilio platform in sending the messages at

17 issue, the Complaint directly implicates the summary judgment ruling in *Sterk*, which

18 involved virtually <u>identical</u> facts and equipment as at issue here.  *Sterk* involved the use of

19 the *same exact* Twilio platform combined with a nearly identical text messaging mobile

20 application that created lists of phone numbers to be dialed through Twilio's platform.  46

21 F.Supp.3d at 819.  The *Sterk* court found that this combination – the same combination at

22 issue here – was an ATDS.  *Id*.

23    The court in *Sterk* was presented with an identical text messaging system as the one

24 before the court here:

25    • "[W]hen an individual creates a Path[5] account, the user makes his or her

26 _____

27 [5] "Path, Inc.," the defendant in *Sterk,* is, like WhisperText, a social networking mobile
   application.

phone contacts available to Path and . . . such contacts are then uploaded onto Path's system." *Sterk*, 46 F.Supp.3d at 818.

- "Path users choose through clicking prompts to upload their phone contacts[.]" *Id.* at 819.

- "The undisputed facts show that Path acquires a stored list of phone numbers from users." *Id.*

- "The undisputed facts also show that Path's ***agent*** then uses automated equipment to make calls from that list." *Id.* at 818. (emphasis added).

Critical to the inquiry here is the fact that the "agent" that the *Sterk* court notes "uses automated equipment to make calls from [the] list" is Twilio, the *same* agent and the *same* equipment alleged to have been used by Defendants in the instant case—a fact which Defendants do not deny. The *Sterk* plaintiff's Statement of Material Facts supporting summary judgment stated that "Path's servers communicate with Twilio's servers automatically and without human intervention through an application programming interface ('API') . . . which Twilio provided" and that "the text messages at issue 'were transmitted to multiple recipients via the Twilio API without human intervention by Path.'" *Sterk*, No. 13-cv-02330, Dkt. 86, ¶¶ 20, 28.[6] Thus, when the *Sterk* court held that the "undisputed facts show that the equipment used by Path . . . makes calls from a stored list without human intervention[,]" and that "[i]t is the ultimate calling from the list by the automated equipment that is the violation of the TCPA," it was referring to the Twilio platform used by the defendant's text messaging system—the very same Twilio platform used by Defendants' WhisperText system here. By drawing out the role of the Twilio platform in actually dialing telephone numbers without human intervention, and clarifying that the WhisperText application itself is limited to only harvesting numbers from the users cell phone – even if

---

[6] The *Sterk* plaintiff's Statement of Material Facts, as well as the *Sterk* defendant's Objections and Responses, is attached hereto as <u>Exhibit C</u>.

such harvesting occurs with the customer's knowledge – the Complaint sufficiently alleges that Defendants utilized an ATDS that operated without human intervention.[7]

### 3.   Human conduct that may be a "but for" cause of a number being dialed does not automatically constitute "human intervention."

Defendants incorrectly argue that the Complaint's separation of the individual components of the WhisperText system and the newly added allegations regarding the role of the Twilio platform do not matter, because "*[b]ut for* this human intervention–a user tapping a 'send' button on his phone–no message would be sent by the Whisper App."  (Mot. at 9) (emphasis added).  By arguing that every action taken by a human user that is the "but for" cause of a message being sent constitutes "human intervention," Defendants make it abundantly clear that they are ultimately seeking to render the TCPA completely useless.  Adopting Defendants' expansive definition of "human intervention" would defy common sense and lead to an absurd result.  All automated calls – voice or text – require at least some human intervention, from programming the equipment, to drafting copy for the message templates, to turning on the equipment, to uploading lists of numbers.  Such actions do not

---

[7] To the extent Defendants rely on *Marks v. Crunch San Diego, LLC*, No. 14-cv-00348, 2014 WL 5422976 (S.D. Cal. Oct. 23, 2014); *Glauser v. GroupMe*; and *Gragg v. Orange Cab Co.*, 995 F.Supp.2d 1189 (W.D. Wash. 2014), all three cases were decided on motions for summary judgment after discovery about the nature of the equipment at issue was exchanged—not solely on the pleadings.  *See Marks*, 2014 WL 5422976, at *3; *Glauser*, 2015 WL 475111, at *2, *6; *Gragg*, 995 F.Supp.2d at *1193.  Furthermore, all three cases are readily distinguishable from the instant case.  For example, in *Gragg*, the amount of human intervention necessary before a text message was sent was far more extensive than here, and involved a three step process involving three separate individuals.  *Gragg*, 995 F.Supp.2d at *1193.  Likewise, *Glauser* involved a situation where the plaintiff was actually the *intended recipient* of the text message and consented to receive further messages.  2015 WL 475111, at *1.  *Marks* involved a text messaging platform that utilized an "Anti-Spam policy" and prohibited numbers from being inputted without written consent or a "call to action," 2014 WL 6632810, at *3, features that Defendants' WhisperText system has not been shown to have.  The court in *Marks* also rejected the FCC 2003 Order, the relevant FCC Order that this Court, as well as Judge Davila and Judge Hamilton, have already explicitly acknowledged.  *Id.*

constitute the "human intervention" that the FCC referred to when determining the definition of an ATDS. If it did, then *nothing* would satisfy the definition of an ATDS.[8]

The court in *Johnson v. Yahoo!, Inc.*, No. 14-cv-2028, 2014 WL 7005102 (N.D. Ill. Dec. 11, 2014), addressed this very argument in the context of another almost identical text messaging system as the one that sent the unauthorized messages here. In *Johnson*, the messaging system would send certain generic text messages – such as a "'Welcome' system message" – in conjunction with, but separately from, any personalized text messages sent by a user. 2014 WL 7005102, at *5. The defendant argued, as Defendants do here, that such generic system messages were a result of human intervention because they would not have been sent but for the user's underlying personal message. *Id.* The court rejected this argument on summary judgment because there was evidence "suggest[ing] that [the defendant's system] can pull numbers and dial them without a person *ordering a specific system message*." *Id.* (emphasis added). The court ruled that "[e]very ATDS requires some initial act of human agency – be it turning on the machine or pressing 'Go.' It does not follow that every subsequent call the machine dials – or message it sends – is a product of that human intervention." *Id.*

As in *Johnson*, the message at issue here is a generic invitational message that the customer was not in any way involved in sending other than allowing Defendants to access his/her contacts. No human – and certainly no customer – physically typed or physically sent each pre-programmed invitational message. As alleged in the Complaint, customers did not draft the messages, did not see the messages at any time before they were sent, and did not even know when the messages would be sent. (Compl., ¶ 32.) Likewise, the customers did not even ask Defendants to send the messages; rather, they were told by Defendants that

---

[8] Indeed, text message senders and telemarketers must obtain their calling lists from somewhere, and no court has ever held that, for example, a retailer giving a telemarketer a list of numbers to be called using equipment that would otherwise constitute an ATDS somehow does not constitute an ATDS because the retailer gave the list to the telemarketer and approved of the sending of the messages.

Defendants themselves would send the messages, with the customers merely providing Defendants with access to their contacts.  As such, any human intervention "admitted" to by Plaintiff in his TAC does not extend to the actual sending of text messages, and is limited to simply being one of many "but for" causes of such messages being sent.  To find otherwise would run contrary to the statutory language of the TCPA, FCC rulings interpreting the TCPA, as well as directly on-point authority on the issue.  Accordingly – and especially in light of the ruling in *Sterk* finding that the exact same set of facts involving the exact same Twilio platform was an ATDS – Defendants' Motion to Dismiss should be denied.

## IV.   <u>CONCLUSION</u>

Rather than addressing the sufficiency of the Complaint on its face, Defendants instead chose to have a second round of briefing based on the already dismissed TAC. However, the sufficiency of the currently operative Complaint should be evaluated solely based on the pleadings made within it.  Because the Complaint establishes every element needed to sustain a cause of action under the TCPA – including detailed allegations that Defendants utilized an ATDS that dialed numbers without human intervention – Defendant's Motion to Dismiss should be denied.

But even if this Court were to consider the prior allegation about customers permitting Defendants to communicate with their contacts to constitute an "admission," the Complaint cures any defects that resulted in the dismissal of the TAC.  By breaking down the component parts of Defendants' WhisperText system, clarifying that any human intervention is solely limited to the creation of calling lists, and establishing that the actual dialing of telephone numbers occurred without any human intervention through a completely separate component than the actual WhisperText mobile application "directed" by the user – all facts that must be accepted as true at the pleadings stage – the Complaint sufficiently pleads a

claim against Defendants under the TCPA.  Accordingly, Plaintiff respectfully requests that

Defendants' Motion to Dismiss be denied in its entirety.

Dated:  May 26, 2015                              Respectfully submitted,

                                                 TONY MCKENNA, individually and on
                                                 behalf of a class of similarly situated
                                                 individuals

                                                 By: /s/ Evan M. Meyers
                                                           One of Plaintiff's Attorneys

David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
212 Marine Street, Ste. 100
Santa Monica, CA 90405
Tel: (818) 990-1299

Evan M. Meyers (*pro hac vice*)
emeyers@mcgpc.com
Eugene Y. Turin (*pro hac vice* to be filed)
eturin@mcgpc.com
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002

*Attorneys for Plaintiff*

1

**CERTIFICATE OF SERVICE**

2

    I, Evan M. Meyers, an attorney, certify that on May 26, 2015, I filed the foregoing

3

*Plaintiff's Memorandum In Opposition to Defendants' Motion to Dismiss* via the Court's

4

CM/ECF electronic filing system.   A copy of said document will be electronically

5

transmitted to the following counsel of record:

6

7

Rodger R. Cole
Tyler Griffin Newby

8

Angel Chiang
FENWICK & WEST LLP

9

555 California Street
12th Floor

10

San Francisco, CA 94104
rcole@fenwick.com

11

tnewby@fenwick.com
achiang@fenwick.com

12

13

Bradley Thomas Meissner
FENWICK & WEST LLP

14

1191 2nd Ave.
10th Fl.

15

Seattle, WA 98101
bmeissner@fenwick.com

16

17

18

                                        /s/ Evan M. Meyers

19

20

21

22

23

24

25

26

27

28